Steven Pool (defendant) and Kevin Phillips (who received permission to intervene) were charged with "a violation of A.R.S. § 13-1802" (theft). At trial, defendant objected to the conduct of the prosecutor and moved for a mistrial; the motion was granted. The prosecution then obtained a second indictment, specifying other charges, which was dismissed without prejudice. The prosecution now seeks to try defendant on a new indictment. Defendant moved for dismissal on the grounds of double jeopardy and prosecutorial vindictiveness. The trial court denied his motion and defendant sought relief by special action. Since defendant has no adequate remedy by appeal and the question presented is of constitutional significance, we have accepted jurisdiction. We have jurisdiction pursuant to Rule 8, Rules of Procedure for Special Actions, 17A A.R.S., and Ariz. Const. art. 6, § 5.
FACTS
On August 2, 1981, defendant and two friends, Kevin Phillips and John Francis, had been drinking for most of the day. They then called upon a mutual acquaintance, Robert Stone, and spent the evening at Stone's house, socializing and drinking. After the defendant and his two friends left the house, Stone discovered that some jewelry belonging to his housemate, Patricia Courtier, was missing. No one saw which of the three visitors took the jewelry. On August 3, defendant and Phillips visited a jewelry store and sold the stolen jewelry. The store proprietor told police that defendant was the seller. The check made by the proprietor for the purchase price was payable to defendant.
From the rather simple fact situation described, the obvious charge would have been that on or about August 2, defendant and Phillips controlled property of another with the intent to deprive the other of such property (A.R.S. § 13-1802(A)(1)), and that on or about August 3, they controlled property of another "knowing or having reason to know that the property was stolen." (Id., subsection (5)). The best procedure would have been to charge them with both. However, the State did not specify any particular subsection in its indictment and merely charged that defendant and Phillips "stole" jewelry on August 2, contrary to A.R.S. § 13-1802. The word of art used in the statute is "control"; neither "steal" nor "stole" is used in the statute.
As defendant's trial commenced,[1] his counsel's opening statement indicated that Phillips would testify and that the fair import of all the evidence in the case would show that, although defendant might have hindered prosecution[2] (a crime with which he had not been charged), he had not committed the crime with which he was charged.
The opening statement evidently angered the prosecutor. Though he made no objection at the time, the prosecutor later sought to ventilate his feelings to the court. The court lectured both attorneys on behavior and the trial proceeded. Phillips was called and refused to testify. The proprietor of the jewelry store, Corey Tennen, testified and identified the defendant as the person who had sold the jewelry. The defendant took the stand and testified that he had sold the jewelry, but said he had done it for Kevin Phillips, not knowing, at the time, where Phillips had obtained the jewelry. Since Phillips had claimed the fifth amendment privilege, there was no way in which the prosecution could contradict this statement. Other problems afflicted the State's case. The authorities had recovered the jewelry from the jewelry store, but had returned it to the owner. The jewelry which had been taken included several gold rings, but the indictment referred to them as silver. The prosecutor had asked the owner of the jewelry to have *Page 101 
the jewelry appraised.[3] The appraisal was above $1,000, but Tennen, who had bought the jewelry, testified that it was probably worth less than $1,000. The indictment charged defendant with stealing on August 2, but there was no direct proof of that. It was obvious from the evidence that the best course would have been to charge defendant with controlling property on August 3 "having reason to know" that it was stolen.
It was in this context that the prosecutor commenced cross-examination of the defendant. Portions of that cross-examination were proper, other portions only arguably proper, and still others irrelevant and rather prejudicial. These tactics did not seem to help the prosecution. So far as can be ascertained from the dry record, the defendant appears to be one of those witnesses who is either truthful, convincing, or both, and handled the questions fairly well. This evidently did not improve the prosecutor's state of mind and the cross-examination moved from the irrelevant and prejudicial to the egregiously improper.
After the cross-examination of the defendant, the trial judge allowed the prosecutor to amend the indictment to describe the stolen articles accurately. Defense counsel then complained about several specific questions and the general demeanor of the prosecutor. The trial judge asked defense counsel if he were moving for a mistrial, and such a motion was made. It was denied.
The next day, the prosecutor presented an amended indictment to the court. In addition to properly describing the stolen items, the amended indictment also charged defendant with having stolen "and/or" controlled property on August 2 and August 3. Defense counsel objected, averring that he had no notice under the original indictment that his client would be charged with anything other than stealing property on August 2, and that a charge of "controlling" property on August 3 was one which contained different elements because of the difference in mental states between § 13-1802(A)(1) (intent to deprive) and subsection (A)(5) (control of property "knowing or having reason to know it is stolen"). The defense argued that the case it had presented rested on defendant's lack of intent to deprive.[4] The prosecutor answered the objections to his motion to amend as follows:
 I'll tell you what is going to happen if . . . the court doesn't do it [allow the amendment], I'll take the case back to the grand jury and charge him with theft on the 3rd. We'll go through it again. I'm not saying that's a threat, but that's probably what's going to happen.
The dialogue which followed seems to indicate that the trial judge was convinced that the prosecution was now attempting to charge two separate offenses. At this point the judge suasponte revisited and granted the defense motion for a mistrial made the previous day.[5] The prosecutor worried that the court might believe that he had "intentionally mistried the case." The trial judge said, "By no means," and added that it was not a propitious time to rule on any double jeopardy issue. *Page 102 
The court did not grant the motion to amend. The prosecutor returned to the grand jury, as predicted, and obtained a new indictment, CR-09455, again naming Pool and Phillips as codefendants. The new indictment alleged the elements of both subsections (1) and (5) of the theft statute and charged criminal acts on both August 2 and August 3. However, the prosecution created a new problem by charging different acts, which took place on different days, in one count. The trial judge dismissed this indictment, without prejudice, as duplicitous. See Rule 13.3(a), Rules of Crim.Proc., 17 A.R.S., which prohibits charging more than one offense in a single count. The prosecutor again returned to the grand jury. This time he obtained a two-count indictment, CR-10391, which more accurately conformed to the trial judge's view of the differences between the two subsections of the statute. The latest indictment charges defendant and Phillips in separate counts with violations of A.R.S. §13-1802(A)(1) and (A)(5), although, through what appears to be a typographical error, the wrong statute was cited in count two.
The case was reassigned from Judge Carruth, the trial judge, to Judge Fahringer. The defense moved for dismissal, arguing that the mistrial had been caused by prosecutorial misconduct and that, therefore, jeopardy attached and prevented retrial. A similar motion had already been heard and denied by the trial judge, who had stated on the record that the prosecutor "did not intentionally create an atmosphere in which a mistrial would have to be declared" and that the "atmosphere" of the trial was "perhaps . . . the result of the combined inexperience of both lawyers." Adopting that finding without reviewing the record, Judge Fahringer denied the motion. After reviewing the record, and taking additional testimony, he denied a similar motion on the ground of prosecutorial vindictiveness in obtaining the new indictment under CR-10391. The defense then filed its special action in this court, and we stayed further proceedings.
Defendant claims that the prosecutor intentionally pursued a course of conduct designed to mis-try the case and extricate the State from the position in which its own errors had placed it. Therefore, defendant argues, the mistrial was the result of deliberate prosecutorial misconduct and the concept of double jeopardy mandates dismissal of the new indictment. As further grounds for dismissal, defendant claims that the new indictment is the result of prosecutorial vindictiveness. The State relies on Judge Carruth's finding that the prosecutor did not intend to provoke a mistrial.
THE MISCONDUCT ISSUE
Characterization
The decision to declare a mistrial is, of course, discretionary with the trial court. State v. Gregory, 108 Ariz. 445,581 P.2d 391 (1982); Cf., Klinefelter v. Superior Court, 108 Ariz. 494,502 P.2d 531 (1972); Evans v. Abbey, 130 Ariz. 157,634 P.2d 969 (App. 1981); Grant v. Arizona Public Service Co, 133 Ariz. 434,652 P.2d 507 (1982). Here, the trial court found the improper conduct serious enough to declare a mistrial.
Determination of whether a particular action is misconduct depends to some extent on the circumstances of the particular case. It is apparent that several areas of cross-examination were quite improper.[6] For instance, references to handling a gun while intoxicated and the drinking habits of the defendant and his acquaintances were both irrelevant and prejudicial. Any idea that counsel may have pursued these points without realizing their irrelevancy is settled by counsel's immediate repetition of questions to which objections had just been sustained. Such conduct is "an impertinence to the court." 3 Wigmore, Evidence
§ 782 at 181 (Chadbourne rev. 1970). Questions characterizing the defendant as a "cool talker," a knowledgeable witness and a "good buddy" of defense counsel are argumentative, grossly improper and designed *Page 103 
to raise prejudice in jurors. Id. § 781. Questions characterizing the evidence, asking the witness for his view of evidence received or his expectations of evidence that will be given are not designed to produce admissible facts but only to invite speculation and argument from the witness in order to put him in a bad light; they are, therefore, argumentative and improper. See M. Udall, Arizona Law of Evidence § 43 at 58 (1960). Questions asking the witness to speculate on testimony which might have been given by someone who has claimed the fifth amendment are improper and constitute misconduct. See State v.Corrales, 138 Ariz. 583, 676 P.2d 615 (1983). Suggestion by question or innuendo of unfavorable matter which is not in evidence and which would be irrelevant, or for which no proof exists is improper and can constitute misconduct. State v.Gregory, 108 Ariz. at 449, 501 P.2d at 391 (1972). Unwarranted abuse of opposing counsel or his client is improper and can be misconduct. Id.; 3 Wigmore, supra, § 781. The trial judge was quite correct in deciding that these and similar matters in cross-examination of the defendant were improprieties which warranted, if not required, mistrial.
Conduct of Trial
The State argues that the conduct of the prosecutor was provoked. We recognize that where one party injects improper or irrelevant evidence or argument, the "door is open," and the other party may have a right to retaliate by responding with comments or evidence on the same subject. State v. Woodward,21 Ariz. App. 133, 516 P.2d 589 (1973); 1 M. Udall J. Livermore, Arizona Practice, Law of Evidence § 11 at 11 (2d ed. 1982). The rule is most often applied to situations where evidence adduced or comments made by one party make otherwise irrelevant evidence highly relevant or require some response or rebuttal. See Statev. Williams, 133 Ariz. 220, 229, 650 P.2d 1202, 1211 (1982);State v. Mincey, 130 Ariz. 389, 636 P.2d 637 (1981), cert.denied, 455 U.S. 1003, 102 S.Ct. 1638, 71 L.Ed.2d 871 (1982). It is true that defense counsel opened the door to some irrelevant areas, but we have searched the record in this case and find nothing which we would label as flagrant misconduct on the part of defense counsel. Since the trial judge granted the defense motion for a mistrial on the ground of improper conduct on the part of the prosecutor, it is obvious that the judge found that the cross-examination of defendant was seriously improper even under the invited error or open door doctrine. We concur with that presumptive finding.
Even if the defense had been guilty of serious misconduct, the prosecutor would not have been entitled to engage in abusive, argumentative and harassing conduct. Our system represents a rule of law based upon the principle that officers of the law are bound by and must act within the law, even though the necessity of so doing may put them at a disadvantage in dealing with criminals or those accused of crime. Any other system is a step which will inevitably lead us, as it has led others, to a society where the worst criminals are often those who govern and administer law. Thus, to paraphrase the words of Justice Sutherland, the prosecutor is not the representative of an ordinary litigant; he is a representative of a government whose obligation to govern fairly is as important as its obligation to govern at all. The prosecutor's interest in a criminal prosecution "is not that it shall win a case, but that justice shall be done." Thus, "while he may strike hard blows, he is not at liberty to strike foul ones." It is the prosecutor's duty to refrain from improper methods calculated to produce a wrongful conviction just as it is his duty to use all proper methods to bring about a just conviction. Berger v. United States,295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).
The best and most effective method to control the courtroom and prevent verbal guerrilla warfare such as that shown by the record in the case at bench is a strong, impartial trial judge. The trial *Page 104 
judge is armed with both discretionary power and rules which he may use to control proceedings. For instance, Rule 611(a), Arizona Rules of Evidence, 17A A.R.S., provides as follows:
 The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time and (3) protect witnesses from harassment or undue embarrassment.
This rule not only gives the court discretion to determine and control the method of interrogation, but the use of the term "shall" requires that the trial judge "should not be merely a passive observer in the trial process, but has an affirmative duty to conduct the trial in such a way as to carry out the goals of the rules." 1 M. Udall J. Livermore, supra, § 33 at 51. This principle is not of recent vintage. Wigmore, in discussing abuses in examination and cross-examination of witnesses, stated:
 The remedy for such an abuse is in the hands of the judges. The disgrace of these occurrences is even more theirs than that of the offending counsel; for the former have not the temptation of partisanship to sway them, and their duty to interfere is easier to fulfill than the counsel's duty to refrain. The slack sense of duty thus so often exhibited becomes the more blamable in contrast with the scrupulous sentimentality which will be exhibited in insisting on the tender quiddities of the law that favor guilty persons. . . .
 Those abuses, it is true, are, as a whole, probably less today than they formerly were; but they are in many places still not uncommon. They are too frequent when they occur at all. . . . [T]here can be no doubt that the law sanctions the power and establishes the duty of the trial judge to use a proper discretion to prevent and rebuke them[.]
Wigmore, supra, § 781 at 176-77.
The trial judge here did not sit by and allow the prosecutor full reign. He sustained objections when made and raised his own when defense counsel made no objection. Eventually he did what his discretion permits and granted the mistrial. We find no fault with his actions. Our point in the foregoing discussion is to emphasize to the bench and bar as a whole that firm action, taken earlier, might well have served as the "ounce of prevention" that would have avoided the necessity of administering the cure by declaring a mistrial.[7]
DOUBLE JEOPARDY
The procedural history of this case and the trial conduct of the prosecutor throw *Page 105 
into sharp relief the various theories concerning the proper standard to be used to bar retrial after a mistrial has been declared because of prosecutorial misconduct.
In Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083,72 L.Ed.2d 416 (1982), the United States Supreme Court plurality opinion held that:
 the circumstances under which . . . a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.
Id. at 2091. The plurality believed that:
 a standard that examines the intent of the prosecutor, though certainly not entirely free from practical difficulties, is a manageable standard to apply. It merely calls for the court to make a finding of fact. Inferring the existence or nonexistence of intent from objective facts and circumstances is a familiar process in our criminal justice system.
Id. at 2089.
Presumably, the standard of "intent" described in the Court's opinion is objective. Justice Powell, who held the deciding vote, joined the plurality opinion on the issue of intent:
 I join the Court's opinion holding that the intention of a prosecutor determines whether his conduct, viewed by the defendant as justifying a mistrial, bars a retrial of the defendant under the Double Jeopardy Clause. Because "subjective" intent often may be unknowable, I emphasize that a court — in considering a double jeopardy motion — should rely primarily upon the objective facts and circumstances of the particular case. See ante, at 2089.
Id. at 2091-92 (Powell, J., concurring) (emphasis in original).
On remand, in construing the double jeopardy clause in the Oregon Constitution, the Supreme Court of Oregon criticized the United States Supreme Court decision in Oregon v. Kennedy on several counts. State v. Kennedy, 295 Or. 260, 273,666 P.2d 1316, 1325 (1983). Recognizing that its differences with the United States Supreme Court were narrow, the Oregon court developed a slightly different formulation for barring retrial under the Oregon double jeopardy clause. Retrial would be barred, the court held, when the prosecution "either intends or is indifferent to the resulting mistrial or reversal." Id. at 276,666 P.2d at 1326.
Arizona courts have also had some problem in defining the line at which prosecutorial misconduct bars retrial. However, "Arizona case law is to the same effect as the federal cases in holding that intentional judicial or prosecutorial overreaching designed to cause a mistrial will result in a bar to any further prosecution." State v. Marquez, 113 Ariz. 540, 542,558 P.2d 692, 694 (1977). In State v. Wilson, 134 Ariz. 551, 554,658 P.2d 204, 207 (App. 1982), the court of appeals stated that the Arizona standard concerned the prosecutor's "motive" to provoke a mistrial. Since that opinion also refers to prosecutorial "intent" and finds the Arizona standard consistent with Oregonv. Kennedy, supra, we need not explore the nice distinctions between "motive" and "intent."[8] On the other hand, we find no case where this court has been presented with a fact situation where a defendant's motion for mistrial was granted as the result of prosecutorial misconduct intended not so much to provoke a mistrial as to avoid probable acquittal or to harass a defendant. We have stated, in refusing to bar a retrial, that the double jeopardy theory could not prevail where nothing in the record indicated that "the State engaged in any intentional misconductor that the defendant was in any way subjected to harassment oroppression. . . ." State v. Wright, 112 Ariz. 446, 450,543 P.2d 434, 438 (1975) (emphasis supplied). *Page 106 
It is essential to compare the course of prosecutorial conduct in this case with other cases treating the double jeopardy issue. In Wright, on redirect and over defense objection, the prosecutor asked a witness, "Why would you like to see the defendant convicted?" Id. at 449, 543 P.2d at 437. A cautionary instruction was given and a defense motion for mistrial was initially denied, but was later granted when the State apparently agreed that its inadvertent conduct could not be cured by the instruction. A second trial resulted in a hung jury. Id.
Defendant asserted that a third trial should be barred by the double jeopardy standard. Arguably, in Wright the defendant waived the double jeopardy bar when he did not object to the second trial. The case at bench is distinguished both by the timeliness of the motion and the extent of the prosecutor's improper questioning.
In Marquez, supra, this court refused "[t]o hold that simple judicial or prosecutorial error is sufficient for barring retrial." Id. at 543, 558 P.2d at 695. We note that the error in Marquez took place outside the presence of the jury. Moreover, the prosecutor was not attempting to avoid an acquittal but was, apparently, trying to fulfill an ethical consideration peculiar to the prosecution by making "timely disclosure to the defense of available evidence . . . that tends to negate the guilt . . . or reduce the punishment." ABA Code of Prof.Res. EC 7-13.
In State v. Wilson, supra, the defendants moved for a mistrial when the prosecutor asked a police officer witness the division in which he worked (organized crime) and if, as a result of working in that division, he had investigated a certain company. Id. at 552, 658 P.2d at 205. The motion was granted. Defendants sought to bar another trial on double jeopardy grounds. The court of appeals found no bar, noting that the questions were arguably proper and harmless. Id. at 554-55,658 P.2d at 207-08.
Finally, it is instructive to examine the misconduct in Oregonv. Kennedy. There the prosecutor sought to rehabilitate a witness on redirect, and asked:
 Prosecutor: Have you ever done business with the Kennedys?
Witness: No, I have not.
Prosecutor: Is that because he is a crook?
 The trial court then granted respondent's motion for a mistrial.
102 S.Ct. at 2086. Justice Powell found it significant that "there was no sequence of overreaching prior to the single prejudicial question." 102 S.Ct. at 2092 (Powell, J. concurring). Moreover, the prosecutor was surprised by the motion for a mistrial and resisted it. Id. Justice Stevens, joined by three other members of the court, noted that
 [t]he gist of the comment that the respondent was a "crook" could fairly have been elicited from the witness, since defense counsel injected the respondent's past alleged improprieties into the trial by questioning the witness about his bias towards the defendant. The comment therefore could not have injected the kind of prejudice that would render unmeaningful the defendant's option to proceed with the trial.
102 S.Ct. at 2098 (Stevens, J., concurring).
From a review of these cases, it is clear that the conduct of the prosecutor in the case at bench is of an entirely different order. The problem here is not some isolated result of loss of temper, but the cumulative effect of a line of questioning in which the prosecutor posed numerous improper questions resulting in at least two bench conferences and one court admonishment. The trial judge granted a mistrial on grounds of improper conduct. Notwithstanding, he found that the prosecutor did not intend to provoke a mistrial. He did not state the reasons for that finding. It may have been based upon his intuitive feelings about the prosecutor's subjective motives or intentions. If so, the finding cannot be sustained even under the plurality view expressed in Oregon v. Kennedy, which teaches that a finding with respect to prosecutorial intent must be based primarily *Page 107 
upon the objective facts and circumstances shown in the record.
Viewed in this light, the record contains little to justify the conclusion expressed by the trial judge. Nothing in the record justifies an inference that the prosecutor had some proper purpose in mind in asking the questions set out in the Appendix, nor in the memorandum filed in this court does the prosecutor advert to any reason which would indicate that the questions were asked through error or negligence, rather than knowingly and intentionally. While the trial judge mentioned counsel's inexperience, we note that the record indicates that the prosecutor had tried over fifty cases before trying the case at bench. Even if this had been his first, many of the questions were so improper that we are compelled to conclude that the prosecutor either knew or should have known of the impropriety. The law cannot reward ignorance; there must be a point at which lawyers are conclusively presumed to know what is proper and what is not.
Certain inferences may be drawn from the uncontroverted facts revealed in the bare record. The State had made several errors in the indictment. The trials of the two defendants had been severed. The trial had not gone well. The defendant had seized upon the defect in the indictment to raise a defense with at least surface plausibility. As the prosecutor indicated in court, one of the methods which could be used to forestall any chance of defendant being acquitted would be to terminate the trial and to begin again with a new indictment alleging different criminal acts under the proper subsections of the theft statute. Defendant's testimony on direct examination had inculpated him of the offense of controlling property with reason to know that it was stolen; this evidence could be used at any retrial. The conduct of the prosecutor was egregiously incorrect to the extent that we must infer that the questions were asked with knowledge that they were improper. From all these circumstances, the written record supports the conclusion that this prosecutor intentionally engaged in improper conduct for the purpose of forcing defendant to seek a mistrial so that the prosecution could procure a new indictment with correct charges.
It is also possible the prosecutor had a different intent. He may have sought to avoid a serious danger of acquittal by using whatever method was available to convict, proper or improper. He may have intended to harass the defendant without thought of the risk of mistrial because of anger at either defendant or defense counsel. He may have simply intended to retaliate for what he perceived as improper conduct of defense counsel, no matter what the risk of mistrial. These possibilities present the very question faced by the United States Supreme Court in Oregon v.Kennedy, supra, and by the Oregon Supreme Court in State v.Kennedy, supra. The issue is narrow. When does double jeopardy attach if mistrial is granted on motion of defendant or court because of prosecutorial misconduct and overreaching? Is it only when the prosecutor's intent in pursuing an improper course of conduct was to cause a mistrial? The plurality of the United States Supreme Court adopted that position. Four members of that court disagreed. The Oregon Supreme Court also disagreed and held that the Oregon constitutional prohibition against double jeopardy was violated:
 when improper official conduct is so prejudicial to the defendant that it cannot be cured by means short of a mistrial, and if the official knows that the conduct is improper and prejudicial and either intends or is indifferent to the [danger of] resulting mistrial or reversal. When this occurs, it is clear that the burden of a second trial is not attributable to the defendant's preference for a new trial over completing the trial infected by error. Rather, it results from the state's readiness, though perhaps not calculated intent, to force the defendant to such a choice.
State v. Kennedy, 295 Or. at 276, 666 P.2d at 1326. *Page 108 
The question has never been clearly presented to this court. We would ordinarily interpret art. 2 § 10 of the Arizona Constitution, which contains our prohibition against double jeopardy, in conformity to the interpretation given by the United States Supreme Court to the same clause in the federal constitution. See Malmin v. State, 30 Ariz. 258, 261,246 P. 548, 548-49 (1926). The decisions of the United States Supreme Court are binding with regard to the interpretation of the federal constitution; interpretation of the state constitution is, of course, our province. Turley v. State, 48 Ariz. 61,70-71, 59 P.2d 312, 316-17 (1936); Marston's, Inc. v. Strand,114 Ariz. 260, 268, 560 P.2d 778, 786 (1977) (Gordon, J. specially concurring in part and dissenting in part). We acknowledge, with respect, that decisions of the United States Supreme Court have great weight in interpreting those provisions of the state constitution which correspond to the federal provisions. We acknowledge that uniformity is desirable. However, the concept of federalism assumes the power, and duty, of independence in interpreting our own organic law. With all deference, therefore, we cannot and should not follow federal precedent blindly. State v. Kennedy, 295 Or. at 268-272,666 P.2d at 1322-24.
We cannot agree with the fundamental premise of the plurality in Oregon v. Kennedy, that a test broader than intent to provoke a mistrial, "would offer virtually no standards." Oregonv. Kennedy, 456 U.S. at 674, 102 S.Ct. at 2089. We agree with the opinion of Justice Stevens for the four-member minority that so specific an intent must necessarily involve a subjective inquiry and is too difficult to determine. 456 U.S. at 689,102 S.Ct. at 2097. Also, we believe that the Court's decision fails to give effect to its own pronouncements regarding the purpose of the double jeopardy clause. The Court acknowledges that the clause gives the defendant an interest in having the prosecution completed by the tribunal before which the trial is commenced. This "interest" expresses a policy against multiple trials.Oregon v. Kennedy, 456 U.S. at 670-671, 102 S.Ct. at 2087. The fundamental principle is that:
 [T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.
Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221,223, 2 L.Ed.2d 199 (1957). We have followed that teaching inState v. Rumsey (Rumsey II), 136 Ariz. 166, 665 P.2d 48,50-51 (1983), and Klinefelter v. Superior Court,108 Ariz. at 496, 502 P.2d at 533.
In our view, therefore, the resolution of the question of when jeopardy attaches should turn upon the concept of enforcing the constitutional guarantee against double jeopardy when the right to be free from multiple trials, which that clause was meant to guarantee, would be impaired by the prosecutor's intentional, improper conduct. Klinefelter v. Superior Court, supra. We do not agree that standards cannot be formulated to accomplish the objectives of the clause in situations such as this. We hold, therefore, that jeopardy attaches under art. 2, § 10 of the Arizona Constitution when a mistrial is granted on motion of defendant or declared by the court under the following conditions:
1. Mistrial is granted because of improper conduct or actions by the prosecutor; and
2. such conduct is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows[9] to be improper and prejudicial, *Page 109 
and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial or reversal; and
3. the conduct causes prejudice to the defendant which cannot be cured by means short of a mistrial.
We agree with the Oregon Supreme Court that when such conduct occurs the burden of another trial cannot be attributed to defendant's preference to start anew rather than "completing the trial infected by error" and is, rather, attributable to the "state's readiness, though perhaps not calculated intent, to force the defendant to such a choice." State v. Kennedy,295 Or. at 276, 666 P.2d at 1326. In such a situation, the State has intentionally exposed the defendant to multiple trials for the same crime and has destroyed his expectation of completing the proceeding before the original tribunal. This is exactly what the double jeopardy provision was intended to prevent.
Turning to the case at bench and applying the test outlined above, we note first that the mistrial was granted by the trial judge because of improper conduct by the prosecutor. Applying minimum standards of legal knowledge and competence, we must conclude that the prosecutor's conduct was not simply erroneous, negligent or mistaken; portions of the questioning are so egregiously improper that we are compelled to conclude that the prosecutor intentionally engaged in conduct which he knew to be improper, that he did so with indifference, if not a specific intent, to prejudice the defendant. The purpose, so far as we can conclude from the record and in the absence of any suggestion of proper purpose from the State, was, at best, to avoid the significant danger of acquittal which had arisen, prejudice the jury and obtain a conviction no matter what the danger of mistrial or reversal. Accordingly, we hold that jeopardy attached and retrial is barred.
The preceding portion of the opinion has dealt exclusively with the issue of prosecutorial misconduct and its effect on retrial of defendant Pool. Phillips, who was allowed to intervene in this special action, has not been on trial and our holding in this case is, therefore, not relevant to his situation.
Phillips joins in Pool's argument that trial under the present indictment is also barred under the doctrine of prosecutorial vindictiveness. See North Carolina v. Pearce, 395 U.S. 711,89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); Blackledge v. Perry,417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). That issue is now moot as to Pool, who may not be retried. It is without merit as to Phillips. The record supports Judge Fahringer's presumptive conclusion that the re-indictments in this case were not the result of vindictiveness on the part of the prosecutor, but merely frenzied attempts to cure multiple mistakes made with regard to the charges. The Pearce doctrine is therefore inapplicable. We presume that since the present indictment against Phillips contains typographical error and some confusion as to the dates alleged in Count One, proper amendments will be allowed. We do not believe that the other issues raised by Phillips merit discussion on special action proceedings.
Petitioner Pool's prayer for relief is granted; petitioner Phillips' prayer for relief is denied. The trial court shall dismiss the indictment with respect to Pool and shall proceed in a manner not inconsistent with this opinion with respect to Phillips. The stay order heretofore entered in this matter is vacated.
HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.
APPENDIX
Excerpts from cross-examination of defendant Pool follow; some of the more serious improprieties are underlined: *Page 110 
Q. You never testified before?
A. Not to my recollection.
Q. If anybody would know it would be you, sir.
 A. . . . I never testified in front of a jury before, no, sir.
 Q. Any special reason why you're seated facing toward the jury and not just perhaps straight out?
A. Because I want the jury to hear my testimony.
 Q. Did anybody else tell you how to sit when you came in here today?
A. No.
. . . .
Q. You're pretty much a cool talker, aren't you?
MR. SCHAYE [Defense counsel]: Judge
COURT: Sustained.
. . . .
 Q. John Brown didn't go hunting with you? [John Brown has no relevance to the case.]
A. No.
Q. Is he going to be here to testify today?
MR. SCHAYE: Irrelevant.
THE COURT: Sustained.
 Q. Is Tony Miller going to be here to testify today? [Tony Miller is another hunting companion who is also irrelevant to the case.]
MR. SCHAYE: Judge
THE COURT: Sustained.
Q. What is Tony Miller's phone number?
A. He's since then moved.
. . . .
Q. John Brown drink?
A. Yes.
 Q. How much — excuse me, that day, was he drinking with you that day?
A. John Brown?
Q. Yeah.
A. No.
Q. John Francis?
A. Yes.
Q. Kevin Phillips?
A. Yes.
 Q. You guys were out shooting a thirty ought eight? [This refers to a hunting trip prior to visiting Stone's house.]
A. .308.
 Q. .308. You were sober enough to handle that weapon safely I assume.
 A. That's probably a debatable question whether we could handle it safely or not.
Q. Could you or couldn't you?
[Objection sustained.]
 Q. What does John Francis' state of intoxication have to do with this case? [For some reason defense counsel had referred to this subject on direct examination.]
[Objection sustained.]
 Q. Well, what about Mr. Machado's state of intoxication? [Machado had been drunk and asleep in the back of John Francis' car on August 2.]
[Objection sustained.]
. . . .
 Q. You sat here throughout the entire testimony yesterday and today?
A. Yes.
 Q. You knew exactly what was going to be presented here today?
A. No.
 Q. No? You knew — did you know what [could be "that"] all the evidence in this case was going to be against you?
A. No.
Q. Don't you care?
A. Of course I care, but I'm not a lawyer.
Q. You talk like one.
. . . .
THE COURT: Approach the bench.
 [The bench conference is unreported, but we think it fairly safe to assume the judge's comments were not complimentary. Undaunted, however, the prosecutor continued.]
 Q. And you realized [soon after the events] that Kevin [Phillips] had stolen [the jewelry].
A. Yes.
 Q. You saw Kevin in here today and he refused to answer any questions? *Page 111 
A. Yes.
Q. His trial is still pending; is that correct?
A. Yes.
 Q. What do you think he's going to say in his case?
[Objection sustained.]
There followed a line of questions which were proper, though fairly senseless, but which evidently were somewhat emotional since the court instructed the prosecutor to allow the witness to make his answer and not to argue with the witness. Then followed a line of questioning about defendant's relationship with his girlfriend and her brother, Kevin Phillips:
Q. Is he [the brother] a very intelligent man?
. . . .
A. Sure.
Q. Smarter than you?
A. I have no idea.
 Q. Why did you laugh when you said that Gavin Garwood was John Francis' room mate?
[Objection sustained.]
Q. How many other pawn shops have you gone to?
[Objection overruled.]
. . . .
 A. I've probably been in two or three over at least in the last twenty-six years.
Q. Two or three different pawn shops?
A. Sure.
Q. How many times in each?
 A. I don't know. Not more than a dozen times ever in my life.
Q. But almost a dozen times in a pawn shop?
A. Not in any particular pawn shop.
Q. What were you selling?
 A. Not always selling. [These questions seem to imply "other bad acts."]
[Objection.]
THE COURT: Approach the bench.
 [The bench conference was again unreported. Defense counsel would do well to see that such conferences are reported.]
THE COURT: Ask another question.
. . . .
 Q. Your attorney said in opening statement he thought you might be guilty of hindering a prosecution.
 [Objection on the grounds that that is not what the defense counsel had stated. The court sustained that objection.]
. . . .
 Q. Do you think you're guilty of hindering a prosecution?
A. No.
 Q. Do you think you're guilty of anything in this case? [Even if the witness were a legal expert, this is not a proper subject of expert testimony. See
Rules of Evid., R. 704, Committee note, 17A A.R.S.]
[1] A motion to sever defendant's trial from that of Phillips was granted.
[2] See A.R.S. § 13-2510, proscribing giving assistance to another with the intent to hinder the other's apprehension, prosecution, conviction, etc.
[3] Theft of property worth more than $1,000 is a class 3 felony, while theft of property worth less than $1,000 but more than $100 is a class 4 felony. A.R.S. § 13-1802(C). Defendant had been charged with the class 3 felony.
[4] In State v. Dixon, 127 Ariz. 554, 562, 622 P.2d 501, 509
(App. 1981), the court of appeals noted that "[t]he varying states of mind set forth, in paragraph 1 the intent to deprive and in paragraph 5 knowing or having reason to know that the property was stolen, have a readily perceivable connection, are consistent with and not repugnant to each other, and clearlymay inhere in the same transaction." Id. (Emphasis supplied.) This does not mean, however, that there is no difference between the requisite states of mind. Moreover, violations of both subsections do not necessarily inhere in a transaction. Finally, we note that in Dixon, unlike the case at bench, the theft count in the indictment gave clear notice to the defendant that the crime alleged was a violation of either or both §13-1802(A)(1) and (5).
[5] The grounds specified for that motion were: "[G]eneral belligerent and argumentative attitude and improper questioning" by the prosecutor.
[6] Verbatim examples are contained in the Appendix.
[7] Conceding that we have the luxury of reflecting upon a written record and are not surrounded by the heated battle precipitated by the trial of this case, we are, nevertheless, constrained to offer some suggestions about handling this type of problem. When the prosecutor's opening salvo (about why defendant faced the jury as he testified) failed to disturb the witness and produced a fairly reasonable answer (so that they would hear the testimony), the prosecutor followed with the question, "You're pretty much a cool talker, aren't you?" There is no possible basis upon which such a question could be justified. It is not only argumentative, but contains innuendo designed to prejudice the witness. See 3 Wigmore, supra, § 781. It is also disrespectful; lawyers, including prosecutors, must treat witnesses and parties with respect. See DR 7-106(C)(2) and (6); Rules of the Supreme Court, Rule 29(a), 17A A.R.S. (Supp. 1983-84).
In light of the previous confusion and emotionality described by the judge as early as the conclusion of opening statements, the "cool talker" comment boded ill for the rest of the cross-examination. We suggest that at this point the trial judge could have called counsel to the bench and admonished him. If, as the trial judge later stated, the prosecutor was inexperienced, it was even more important to educate him with regard to what would and would not be allowed. The judge's failure to take any action except to sustain the objection to the comment may have contributed to the prosecutor's persistence in improper questioning. In fact, only a moment afterward, the prosecutor asked a question to which an objection was sustained and immediately followed this by propounding precisely the same, improper question with regard to a different person. Again, we suggest the judge might do more than sustain an objection.
[8] We note with disapproval any potential for slipping from the standard of "intent" to the more subjective one of "motive."
[9] The trial judge is to measure what the prosecutor "intends" and "knows" by objective factors, which include the situation in which the prosecutor found himself, the evidence of actual knowledge and intent and any other factors which may give rise to an appropriate inference or conclusion. He may also consider the prosecutor's own explanations of his "knowledge" and "intent" to the extent that such explanation can be given credence in light of the minimum requirements expected of all lawyers.