[No. 31685-1-I.  Division One.  July 31, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. ANDRE ANTHONY LEWIS, *Appellant*.

*Jessica Ryan,* of *Washington Appellate Defender Association,* for appellant.

*James Konat, Deputy Prosecutor,* for respondent.

BECKER, J. — The first trial of Andre Lewis ended in a mistrial because the prosecutor persisted in asking unfounded and prejudicial questions of a witness. The trial court denied a motion to dismiss for double jeopardy. Because we cannot say that the trial court erred in its assessment of the misconduct under the federal test or the Oregon variant of that test, we affirm the conviction resulting from the second trial.

The State tried Andre Lewis on second-degree murder charges for the shooting death of Olenthous Woods. The owner of the AM/PM store where the shooting took place

had observed the shooting and testified at trial about the statement he gave to detectives. Prosecutor James Konat asked the owner who else had approached him for a statement. The owner answered that a defense investigator had tried several times to get him to make a "tilted" statement. The exchange precipitated a series of objections from defense counsel Peter Connick:

Q (By Mr. Konat) What do you mean when you say tilted?

A He was trying to make it sound—he was trying to make me say—

   MR. CONNICK: I'll object.

   THE COURT: Sustained.

. . . .

Q Did this person tell you for whom he was working?

A He said he was working for a law firm that represent the defendant and that he is a private investigator.

Q Were you ever presented with a written form of statement by this person?

A He wanted me to sign a written statement that he read to me on the phone. And I told him that was not my statement.

Q So did you refuse to sign that statement?

A Yes, I did.

Q Why did you refuse to sign that statement?

A Because . . . he wanted me to say that the whole thing was a self-defense. He wanted to give me the impression that what I saw—

   MR. CONNICK: I'm going to object, your Honor.

   THE COURT: Sustained.

Q (By Mr. Konat) Well, what about the statement that he wanted you to sign was incorrect?

   MR. CONNICK: I'm going to object as to relevance, your Honor.

   THE COURT: Sustained.

Q (By Mr. Konat) How long after this shooting took place did this person approach you for that statement?

A About a month.

MR. CONNICK: I'm going to object, your Honor, and move to strike the whole line of questioning. There's a lack of foundation. And I sure hope this isn't an insinuation that this was someone working for me, which is exactly the impression the prosecutor's trying to give.

The court granted the defense motion to strike, and instructed the jury to disregard the line of questioning concerning the private investigator. Lewis then moved for a mistrial. The court granted the motion, concluding the State had introduced irrelevant, prejudicial evidence that denied Lewis a fair trial.

A week later, Lewis moved to dismiss, pleading former jeopardy. The issue presented by his motion was: When the government's misconduct forces a mistrial, under what circumstances does the constitutional bar against double jeopardy prevent a retrial?

The United States Supreme Court clarified the federal standard in 1982 in the case of Oregon v. Kennedy.[1] In that case, the prosecutor asked the expert witness: "Have you ever done business with the Kennedys?" When the witness said "No", the prosecutor asked, "Is that because he is a crook?"[2] The Court held: "Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion".[3]

On remand, the Oregon Supreme Court formulated a different test based on the Oregon State Constitution. The

---

[1]*Oregon v. Kennedy*, 456 U.S. 667, 72 L. Ed. 2d 416, 102 S. Ct. 2083 (1982).

[2]*Oregon v. Kennedy*, 456 U.S. at 669.

[3]*Oregon v. Kennedy*, 456 U.S. at 676.

Oregon test bars reprosecution where "improper official conduct is so prejudicial to the defendant that it cannot be cured by means short of a mistrial, and if the official knows that the conduct is improper and prejudicial and either intends or is indifferent to the resulting mistrial or reversal".[4]

The Washington Supreme Court has not decided whether this state, like Oregon and Arizona, should adopt its own test under the state constitution. In *State v. Hopson*,[5] the court emphasized the "narrow difference" between the two tests, noting that both require a rare and compelling set of facts. "When a set of facts that would require different results under the Oregon and federal analyses is before the court, we will determine the scope of" the Washington clause.[6]

Lewis now asks this court to adopt the Oregon standard and to reverse.

Under the federal test the trial court must be able to find that the State was *intentionally* trying to provoke a mistrial. To obtain a dismissal under the federal test, the critical factor is the trial court's perception that the State's case was going badly and the prosecutor was looking for an excuse to start over. That perception is not necessarily essential to meet the Oregon standard of "indifference". Indifference, analogous to recklessness, occurs when the conscious misconduct of a State actor creates a risk of mistrial in the absence of actual intent to obtain a second chance to try the case. Arizona similarly holds that a prosecutor's intention to provoke a mistrial is not the only type of intention that unfairly exposes the defendant to a second trial:

> He may have sought to avoid a serious danger of acquittal by using whatever method was available to convict, proper or

---

[4](Emphasis added.) *State v. Kennedy*, 295 Or. 260, 276, 666 P.2d 1316, 1326 (1983). The Oregon court affirmed Kennedy's conviction using this test.

[5]*State v. Hopson*, 113 Wn.2d 273, 283, 778 P.2d 1014 (1989).

[6]*Hopson*, 113 Wn.2d at 283-84.

improper. He may have intended to harass the defendant without thought of the risk of mistrial because of anger at either defendant or defense counsel. He may have simply intended to retaliate for what he perceived as improper conduct of defense counsel, no matter what the risk of mistrial.[7]

The trial court here explicitly found that the prosecutor did not intend to provoke a mistrial:

THE COURT: . . . In my judgment, the case was not going badly for the State. I listened to Mr. Konat, who was here, and saw him asking those questions. And in my judgment, he was not eliciting the testimony intentionally, trying to have the Court declare a mistrial because of a weakness of the State's case at that time. So objectively, I don't think there was any intentional or deliberate misconduct intending to cause a mistrial and prejudicing your client.

Aware of Oregon's different approach, the court said the record would not support a finding that the Oregon standard was satisfied either.

■ ■ A finding as to the intent of the prosecutor is factual. The trial court may infer its finding from objective facts and circumstances.[8] An appellate court will not disturb a factual finding that is supported by substantial evidence.[9] The trial court's finding as to intent is akin to a credibility determination, if not exactly like it, because the finding requires an evaluation of factors not readily apparent from the cold pages of an appellate transcript.

We agree with the trial court that the misconduct was serious. The prosecutor's questions were prejudicial for

---

[7]*Pool v. Superior Court*, 139 Ariz. 98, 677 P.2d 261, 270 (1984). In *Pool*, the record was replete with insulting, argumentative questions on a variety of subjects, resulting in at least two bench conferences and causing the appellate court to remark, "The law cannot reward ignorance". *Pool*, 677 P.2d at 270, 272-74. *Pool* is one of few reported cases in which a defendant has successfully used either standard to bar reprosecution. *See Oregon v. Kennedy*, 456 U.S. at 691 n.33 (Stevens, J., concurring).

[8]*Oregon v. Kennedy*, 456 U.S. at 675; *Hopson*, 113 Wn.2d at 278; *State v. Cochran*, 51 Wn. App. 116, 119, 751 P.2d 1194, *review denied*, 110 Wn.2d 1017 (1988).

[9]*State v. Halstein*, 122 Wn.2d 109, 128, 857 P.2d 270 (1993).

the reason noted by the court—the insinuation that the so-called investigator was an agent of defense counsel Connick. Further, the questions lacked a foundation to show that the person who approached the store owner actually was sent by Lewis. Without such a foundation, which the prosecutor never produced, the evidence had no relevance. The prosecutor continued his questioning after the court had sustained three objections.

When adrenaline overcomes judgment and trial court rulings are ignored, the trial may lose its civilized attributes and be reduced to the level of a dog chasing a cat. A mistrial will often be the result, as it was here. But we cannot say the trial court erred in characterizing the State's conduct as insufficient to bar a retrial. Even under the Oregon "indifference" test, the State is held "only to the consequence of what its official knew to be prejudicial misconduct . . . . Incompetence, thoughtlessness, or excitability of the state's officers may lead to a mistrial, but it does not reflect a willingness to risk placing the defendant repeatedly in jeopardy for the same offense".[10] The trial court here did not find the prosecutor knowingly engaged in prejudicial misconduct. The record does not demand that finding.

■■ The general rule is where the defendant moves for a mistrial, the double jeopardy clause does not bar a retrial.[11] Whether measured by the federal or Oregon standard, the exception Lewis seeks to invoke is a narrow one.[12] Mindful that stretching it to accommodate any but the most compelling facts would complicate rulings on mistrial motions,[13] we defer to the firsthand observations and sound judgment of the trial court and uphold its factual determination.

---

[10]*State v. Kennedy*, 666 P.2d at 1326-27.

[11]*Oregon v. Kennedy*, 456 U.S. at 672-73.

[12]*Oregon v. Kennedy*, 456 U.S. at 673; *see also State v. Kennedy*, 666 P.2d 1324-25.

[13]*See Oregon v. Kennedy*, 456 U.S. at 676-77.

As Hopson requires, we "will not unnecessarily decide the scope of constitutional provisions".[14] Since the conduct here does not require different results under the Oregon and federal analyses, we do not decide whether to follow Oregon in interpreting Washington's double jeopardy clause.

The judgment is affirmed.

KENNEDY, A.C.J., and AGID, J., concur.

Review denied at 128 Wn.2d 1012 (1996).