NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MARCUS TALIAFERO WILLIAMS, *Appellant.*

No. 1 CA-CR 23-0137

FILED 09-03-2024

Appeal from the Superior Court in Maricopa County
No. CR2021-108279-001
The Honorable Kevin B. Wein, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Brown and Little, PLC, Chandler
By Matthew O. Brown
*Counsel for Appellant*

Marcos Taliafero Williams, San Luis
*Appellant*

## MEMORANDUM DECISION

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Andrew M. Jacobs joined.

**C R U Z**, Judge:

¶1 Marcus Taliafero Williams appeals his conviction and sentence for second-degree murder. Williams' counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), certifying that, after a diligent search of the record, he found no arguable questions of law. Counsel asks us to search the record for reversible error. Williams filed a supplemental brief, which this Court has considered. After reviewing the record, we affirm Williams' conviction and sentence.

## FACTUAL AND PROCEDURAL HISTORY

¶2 We view the facts in the light most favorable to sustaining the conviction and resolve all reasonable inferences against Williams. *See State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998).

¶3 In February 2021, John,[1] an elderly man, was walking through the parking lot of a shopping mall on Bethany Home Road in Phoenix, Arizona. At some point, Williams drove up, got out of his car, and began yelling at John. Without any provocation from John, Williams punched him in the face. John fell backward and hit his head on the ground. Williams stood over John in a fighting stance before getting back in his car and speeding away.

¶4 A witness called 9-1-1 and ran to help John, who was lying on the ground. The witness told dispatch that he saw the last two numbers of Williams' license plate, 6-7, and described the car as a late model Nissan Altima with faded metallic paint. A second witness, who also called 9-1-1, followed Williams east on Bethany Home Road. The witness lost Williams after he turned south on Central Avenue. The witness described Williams' car as a Nissan with metallic paint and damage to the front passenger's side. Both witnesses described Williams as a black man with a "pudgy" or heavy

---

[1] We use a pseudonym to protect the victim's privacy.

build. A third witness only heard a shout, a "thump," and then saw Williams speed away. She said that Williams' car looked like a 2000 Nissan Altima with damaged or faded metallic paint.

¶5         Police officers responded to the 9-1-1 calls and saw a late model Nissan Altima travelling south on Central Avenue. They saw that the car had damage to the front passenger's side, "discolored or damaged" metallic paint, and the license plate had the last two numbers 6-7. The officers followed the car to a restaurant's parking lot, where they observed Williams and a female passenger get out of the car. Williams' appearance fit the general descriptions provided by witnesses. The officers detained Williams briefly in the parking lot and brought one of the witnesses to identify him. The witness told officers, "I didn't see facial features of the person because I was at a distance, but I knew based on make and model of vehicle, color of vehicle, the body type, age, size of the person and the clothing that they were wearing, that everything that I saw matched what I remembered."

¶6         Meanwhile, paramedics responded to the mall's parking lot, observed that John had difficulty standing and answering questions, and transported him to the hospital. Doctors discovered that John suffered a severe brain injury and required emergency surgery. They could not control the bleeding in John's brain and he died at the hospital. A medical examiner conducting the autopsy saw that John had bruises on his face and jaw, orbital fractures, and fractures to the back of his skull. The medical examiner concluded that John died of complications due to blunt force head trauma and ruled his death a homicide.

¶7         After John passed away, officers detained and interviewed Williams. During the interview, he appeared animated and argumentative. Williams admitted to driving a 2001 Nissan Altima, with his ex-girlfriend as the sole passenger, on the day of the offense. Williams stated that he had "probably" driven through the mall's parking lot. He said that people were harassing him during that time period, and he wanted them to leave him alone, but he denied assaulting anyone. Officers also spoke with Williams' ex-girlfriend who admitted that they were in the mall's parking lot on the day of the offense. Although she did not recall Williams getting into an altercation, she had fallen asleep in the backseat and woke up as they were turning south on Central Avenue. Williams told her that officers were following them, even though the officers never engaged their sirens or emergency lights.

¶8            Officers gathered video surveillance from businesses in and near the mall.  Although the surveillance did not capture the moment of the offense, it showed Williams' car and John walking through the parking lot. Cellular data also placed Williams and his ex-girlfriend near the mall at the time of the offense.  The State charged Williams with one count of second-degree murder, a class 1 felony.  *See* A.R.S. § 13-1104(A)(3) (second-degree murder).

¶9            Before trial, the superior court denied Williams' motion to remand to the grand jury for a redetermination of probable cause.  Williams petitioned for special action review, this Court accepted jurisdiction, and denied relief.  Williams also moved to suppress statements he made when officers first contacted him in the restaurant's parking lot, arguing that they were obtained in violation of his Fifth Amendment rights.   The court conducted a suppression hearing and granted the motion in part, suppressing any statements Williams made "in response to questions from law enforcement between the time he was placed inside the police vehicle and when he was read the *Miranda* advisement."   The State did not introduce these statements at trial.  The court also precluded any mention of Williams' drug use at the time of the offense.

¶10          At trial, the State presented eyewitness testimony, expert testimony, video surveillance, autopsy and crime scene photos, and a redacted recording of Williams' interview.  After the State's case-in-chief, the superior court denied Williams' motion for judgment of acquittal under Arizona Rule of Criminal Procedure ("Rule") 20(a)(1), finding the State presented sufficient evidence for the jury to render a verdict.  *See* Ariz. R. Crim. P. 20(a)(1).  Williams elected not to testify on his own behalf.  Upon the State's request, the court instructed the jury on the lesser-included offense of manslaughter.  The jury, however, found Williams guilty of the greater offense of second-degree murder. Williams stipulated to four of the aggravating factors alleged by the State.

¶11         The superior court conducted the sentencing hearing in compliance with Williams' constitutional rights and Rule 26.  The court sentenced Williams to the slightly aggravated term of 19 years' imprisonment with 759 days of presentence incarceration credit,[2] and imposed the standard fees and assessments.  *See* A.R.S. § 13-710(A) (sentencing range for second-degree murder).  The court also issued a lifetime no-contact injunction, prohibiting Williams from contacting John's next of kin.  *See* A.R.S. § 13-719(A)(1) (allowing lifetime injunctions for dangerous offenses).  Williams timely appealed.  We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

¶12         We review the entire record for reversible error.  *State v. Thompson*, 229 Ariz. 43, 45, ¶ 3 (App. 2012).  Counsel for Williams has advised this Court that after a diligent search of the entire record, counsel has found no arguable question of law.

¶13         In Williams' supplemental brief, he first argues that the superior court erred by denying his motion for judgment of acquittal.  Specifically, he claims that the State failed to present sufficient evidence "directly identifying" him as the perpetrator. We review this issue de novo, viewing the evidence in the light most favorable to sustaining the jury's verdict.  *See State v. Burns*, 237 Ariz. 1, 20, ¶ 72 (2015).  In making this determination, the relevant inquiry is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Sufficient evidence may exist even where conflicting evidence is presented, *State v. Flowers*, 110 Ariz. 566, 567 (1974), and may be circumstantial or direct, *State v. Pena*, 209 Ariz. 503, 505, ¶ 7 (App. 2005).

---

[2]         The superior court awarded one more day of presentence incarceration credit than was warranted, but absent a cross-appeal by the State, we lack the jurisdiction to correct an illegally lenient sentence.  *See State v. Dawson*, 164 Ariz. 278, 281–83, 286 (1990).

**¶14** To convict a person of second-degree murder, as relevant here, the State must prove that "without premeditation," and "[u]nder circumstances manifesting extreme indifference to human life, the person recklessly engages in conduct that creates a grave risk of death and thereby causes the death of another person." A.R.S. § 13-1104(A)(3). Through video surveillance, eyewitness testimony, and officer testimony, the State placed Williams at the crime scene and presented sufficient evidence that he hit John in the face. Expert witness testimony, supported by an autopsy report and photos, proved that John had been hit in the face, he fell backward and hit the back of his head, and the impact fractured his skull. This injury caused bleeding in John's brain and resulted in his death. Although the State did not present video surveillance showing the exact moment of the offense and eyewitnesses did not see Williams' distinct facial features, the evidence, even if circumstantial, established that Williams perpetrated the assault that caused John's death. *See Pena*, 209 Ariz. at 505, ¶ 7. Sufficient evidence supports Williams' conviction, and the superior court did not err in denying his motion for judgment of acquittal.

**¶15** Next, Williams argues that numerous instances of prosecutorial error, both separately and cumulatively, deprived him of the right to a fair trial and due process. *See In re Martinez*, 248 Ariz. 458, 470, ¶ 47 (2020) (distinguishing between prosecutorial error and misconduct). He claims that, throughout trial, the prosecutor improperly vouched for the State's witnesses, misrepresented the evidence, elicited precluded testimony, expressed his personal opinion, and lied about his ability to redact exhibits. To warrant reversal, the alleged prosecutorial error must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998) (citation and internal quotation marks omitted). "[S]uch conduct is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial." *Pool v. Superior Ct. In & For Pima Cnty.*, 139 Ariz. 98, 108 (1984).

**¶16** We have reviewed the entirety of the prosecutor's opening and closing remarks, as well as his examination of witnesses, and find nothing in the record rising to the level of prosecutorial error. The prosecutor did not engage in intentional vouching by placing the prestige of the government behind the State's witnesses, he did not provide personal assurances of their credibility, and he did not present precluded or misleading evidence. *See State v. King*, 180 Ariz. 268, 276–77 (1994); *Pool*, 139 Ariz. at 108. The prosecutor properly used opening remarks "to apprise the jury of what the party expects to prove and prepare the jurors' minds

for the evidence which is to be heard," *State v. Prewitt*, 104 Ariz. 326, 333 (1969), and closing argument to "summarize the evidence, make submittals to the jury, urge the jury to draw reasonable inferences from the evidence, and suggest ultimate conclusions," *State v. Bible*, 175 Ariz. 549, 602 (1993). All within the permissible range of conduct. Although the parties litigated the extent of redacting particular exhibits, namely body-worn camera footage, the State ultimately redacted the footage and Williams stipulated to its admission. Moreover, the superior court instructed the jury that statements by counsel do not constitute evidence, and they should not consider or speculate on redacted portions of the exhibits. We presume the jury followed the court's instructions. *See State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006) (citing *State v. Ramirez*, 178 Ariz. 116, 127 (1994)). The alleged instances of prosecutorial error, taken separately or cumulatively, did not result in an unfair trial or denial of due process. *See Hughes*, 193 Ariz. at 79, ¶ 26.

¶17        Finally, Williams argues he received ineffective assistance of appellate counsel. Such claims may not be raised on direct appeal. *State ex rel. Thomas v. Rayes*, 214 Ariz. 411, 415, ¶ 20 (2007). Instead, they must be presented to the superior court in a post-conviction relief proceeding under Rule 32.1. *See* Ariz. R. Crim. P. 32.1(a) (grounds for post-conviction relief for ineffective assistance of counsel). We need not address such a claim here.

¶18        All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, counsel represented Williams at all critical stages of the proceedings. The superior court properly instructed the twelve-person jury on the elements of the charged offense, the elements of the lesser-included offense, the State's burden of proof, the presumption of innocence, and all other applicable laws. The record contains substantial evidence supporting the jury's verdict and no-contact order. The court sentenced Williams within the statutory limits and imposed the appropriate fees and assessments. We decline to order briefing and affirm Williams' conviction and sentence.

¶19        Upon the filing of this decision, Williams' counsel shall inform him of the status of the appeal and of his future options. Counsel has no further obligations unless, upon review, he finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Williams shall have 30 days from the date of this decision to proceed, if he desires, with a pro per motion for reconsideration or a petition for review.

## CONCLUSION

**¶20**      For the foregoing reasons, we affirm Williams' conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV