**STATE of Tennessee, Appellee,**

v.

**John Thomas TUCKER, a/k/a Tommy Tucker, Appellant.**

**No. 85–353–III.**

Court of Criminal Appeals of Tennessee, at Nashville.

Nov. 19, 1986.

---

David E. High, Garfinkle, Gober, Wilson & High (At trial and on appeal), William C. Wilson, Garfinkle, Gober, Wilson & High (At trial only), Nashville, for appellant.

Susan L. Kay, Vanderbilt Legal Clinic, Vanderbilt School of Law, Nashville, for Tennessee Association of Criminal Defense Lawyers, amicus curiae.

W.J. Michael Cody, Atty. Gen., Kevin Steiling, Asst. Atty. Gen., Nashville, J. Kenneth Atkins, Dist. Atty. Gen., Daniel W. Cook, Asst. Dist. Atty. Gen., Charlotte, for appellee.

## OPINION

SCOTT, Judge.

The appellant was indicted for concealing a stolen General Motors engine valued at over $200.00. The appellant filed several motions in limine to prevent certain testimony from being placed before the jury. One motion sought to prevent the admission of evidence of the appellant's prior criminal record until a *State v. Morgan,* 541 S.W.2d 385 (Tenn.1976) hearing could be conducted to determine its admissibility. The motion was granted.

During the direct examination of Tommy Driver, a witness for the prosecution, Mr. Driver was asked the following questions by the Assistant District Attorney General and gave the following answers:

Q. Okay. Now so these folks will know something about your background— let's just let them know exactly who you are and what you are—have you

had some problems with the law before?

A. Yes.

Q. And tell us about that.

A. In 1978, I believe it was, I was convicted in Federal Court on four counts of Receiving and Concealing and Conspiracy.

Q. Okay. And was that on some property?

A. Yeah, Yes sir.

Q. And so you are a convicted felon, is that right?

A. No question about it.

Q. Now involving that particular case, who did you buy the property from?

A. Some of the property was purchased from Mr. Tucker.

Q. This defendant here.

MR. HIGH: Objection, Your Honor.
THE COURT: Sustained. The jury will disregard that. Don't get into that again, General.

At the conclusion of the direct examination the appellant's counsel moved for a mistrial and it was granted. In so doing the trial judge found that:

(T)he prosecutor was guilty of prosecutorial misconduct, in asking a question that he knew or should have known was improper. The Court further finds that the prosecutor was guilty of reckless misconduct with an indifference to the consequences, but the Court finds that the prosecutor did not act with intent to produce a mistrial.

The trial judge went on to find that based upon the standards set forth in *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1983), a retrial is not barred by double jeopardy. The court then granted the appellant's application for an interlocutory appeal pursuant to Rule 9, T.R.A.P., and this Court accepted the appeal.

The sole issue presented in this case is whether intentional and reckless prosecutorial misconduct with an indifference to the consequences bars retrial of the appellant under the double jeopardy provisions of Article I, § 10 of the Tennessee Constitution.

The appellant and the state agree that retrial is not barred under the Fifth Amendment of the United States Constitution. *Oregon v. Kennedy, id.,* is dispositive of the issue under the Federal Constitution. However, the appellant urges this Court to adopt a standard under the double jeopardy provision of the Tennessee Constitution which is more protective of a defendant's right not to be twice placed in jeopardy than is afforded under the Federal Constitution. In support of this contention the appellant and the amicus point us to cases from other jurisdictions which have done just that.

The United States Supreme Court has specifically recognized that state courts have full and final power to determine the constitutionality of state statutes, procedures or courses of conduct under the provisions of the state constitutions even when the state and federal constitutions contain similar or identical provisions. *Miller v. State*, 584 S.W.2d 758, 760 (Tenn.1979), citing *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975), and *Jankovich v. Indiana Toll Road Commission*, 379 U.S. 487, 85 S.Ct. 493, 13 L.Ed.2d 439 (1965). Of course, the Tennessee Supreme Court—not this intermediate appellate court—is the court of last resort as to interpretations of our Tennessee Constitution. *Miller v. State*, supra. Our Supreme Court has specifically recognized that the constitutional guarantees contained in the Tennessee Constitution may expand protection of a defendant's rights beyond the comparable federal constitutional guarantees. *Miller v. State*, supra.

This is a matter of first impression in Tennessee. This Court has previously utilized the *Oregon v. Kennedy* standard. *State v. Nixon*, 669 S.W.2d 679, 681 (Tenn. Cr.App.1983). However, state constitutional double jeopardy principles were not addressed in that opinion. In *State v. Kenneth Daughtery*, Tennessee Criminal Appeals, opinion filed at Knoxville, February 11, 1985, Judge Daughtrey suggested in a concurring opinion that the double jeopardy

issue needs to be considered under the state constitutional provision.

The pertinent portion of the Fifth Amendment to the United States Constitution provides:

(N)or shall any person be subject for the same offense to be twice put in jeopardy of life or limb.

Article I, § 10 of the Tennessee Constitution provides:

That no person shall, for the same offence, be twice put in jeopardy of life or limb.

As can be readily seen, these provisions provide identical protection from reprosecution in criminal cases.

In *Oregon v. Kennedy,* supra, the United States Supreme Court, considering prosecutorial misconduct as the basis for a double jeopardy claim, held that "(o)nly where the governmental conduct is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first trial on his own motion." 102 S.Ct. at 2089. The judgment of the Oregon court was reversed and the cause was remanded for further proceedings.

On remand the Oregon Supreme Court held that retrial is barred under Article I, § 12 of the Oregon Constitution "when improper official conduct is so prejudicial to the defendant that it cannot be cured by means short of a mistrial, and if the official knows that the conduct is improper and prejudicial and either intends or is indifferent to the resulting mistrial or reversal." *State v. Kennedy,* 295 Or. 260, 666 P.2d 1316, 1326 (1983). The Oregon Supreme Court concluded that the federal test of prosecutorial intent to cause a mistrial does not further the purpose of the double jeopardy clause, since its purpose is to protect a defendant from "the harassment, embarrassment and risk of successive prosecutions." *Id.,* at 666 P.2d at 1324. The Oregon court does require a finding that the prosecutor has consciously chosen to engage in prejudicial misconduct, whatever the motive. *Id.,* at 666 P.2d at 1326. "Incompetence, thoughtlessness or excitabili-

ty" of the prosecutor may lead to a mistrial. However, those reasons do not reflect "a willingness to risk placing the defendant repeatedly in jeopardy." *Id.,* at 666 P.2d at 1327. Thus, a retrial is not barred when the mistrial resulted from any one of these reasons. *Id.* Having said all of that, the Oregon Supreme Court went on to hold there was no double jeopardy violation in *Kennedy,* since the record failed to show that "the criteria for imposing a constitutional bar against a second trial" were met. *Id.* Rather, the record showed that the prosecutor's question "went beyond permissible bounds," but did not reflect "conscious misconduct," "bad faith," an "intentional impropriety" or even "gross negligence." *Id.*

In *Pool v. Superior Court,* 139 Ariz. 98, 677 P.2d 261, 271–272 (1984), the Arizona Supreme Court adopted a standard more protective than the federal standard under the provisions of Article 2, § 10 of the Arizona Constitution. The Court fashioned the following three part test as to when a retrial would be barred: (1) The mistrial must be granted because of improper conduct or actions by the prosecutor; and (2) the conduct must not merely be the result of "legal error, negligence, mistake or insignificant impropriety," but must be conduct, which taken as a whole, "amounts to intentional conduct which the prosecutor knows to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial or reversal"; and (3) the conduct must cause prejudice to the defendant which cannot be cured short of mistrial.

"Intends" and "knows" are to be measured by the trial judge by objective factors, including the situation in which the prosecutor found himself, the evidence of actual knowledge and intent and any other factors which may give rise to an appropriate inference, including the prosecutor's own explanations of his knowledge and intent. *Id.,* at 677 P.2d at 271–272, fn. 9.

The court found that portions of the cross-examination of Mr. Pool were "egregiously improper," indicating intentional

misconduct, done "with indifference, if not specific intent, to prejudice the defendant." Retrial was barred. *Id.*, at 677 P.2d at 272.

In *State v. Fuller*, 350 N.W.2d 382, 286 (Minn.App.1984), the court looked to the *State v. Kennedy*, supra, holding and held that another retrial was barred after two mistrials were declared because of improper testimony by the state's first witness. The court relied on the double jeopardy provision in Article I, § 7 of the Minnesota Constitution. Chief Judge Popovich, writing for the court, found that successive retrials "without the opportunity to complete a fair trial resulting in either conviction or acquittal" violated that state's double jeopardy provision. However, on appeal to the Supreme Court of Minnesota, that Court found that, at worst, the prosecutor was "merely negligent" in asking the improper question. The intermediate court was reversed and a retrial ordered. The Supreme Court did not view *Fuller* as an appropriate case to decide whether the Minnesota Constitution afforded greater protection than the federal constitution. *State v. Fuller*, 374 N.W.2d 722, 727 (Minn. 1985).

We respect the holdings of the appellate courts of these sister states. We note that in *Kennedy* and *Fuller*, the ultimate result was the trial proceeded. In *Pool*, the questions the Arizona court found so improper do not appear to us to be anything but close cross-examination.

■■■■ A test based on prosecutorial intent to provoke a mistrial is consistent with the purpose of the double jeopardy provision. As a general rule a mistrial ruling contemplates the reprosecution of the defendant. *U.S. v. Jorn*, 400 U.S. 470, 476, 91 S.Ct. 547, 552, 27 L.Ed.2d 543 (1971). The purpose of the constitutional safeguard is to protect the defendant from the enhanced risk of being found guilty through the process of using successive trials brought at the behest of the state with its many resources. As a result of the double jeopardy provision, the state is required to marshal its proof and be ready for trial, knowing that it will only have "one bite at the apple." Likewise, it re-

quires that the state's attorneys follow the law and stay within the procedural boundaries set by the trial and appellate courts.

There is a strong competing interest between a defendant's right to a fair trial and society's right to have guilty criminals convicted. The *Oregon v. Kennedy* standard protects those competing interests. In the overwhelming majority of the cases, corrective instructions to the jury can be utilized to remove the taint of less serious prosecutorial misconduct. In cases of more serious error, the court can admonish the prosecutor in the presence of the jury, expressing the court's disdain for the prosecutor's improper actions. Finally, in the most egregious cases, the trial judge can, upon a defense motion, grant a mistrial and preserve the defendant's right to a retrial before another untainted jury. Only when it is shown that the prosecutor is "goading" the defense into moving for a mistrial will double jeopardy bar a retrial.

■■■ The question that defense counsel and trial courts ask is "how do you know when that is the prosecutor's tactic?" In *Pool v. Superior Court*, supra, the Arizona Supreme Court provides guidance in a footnote. The trial judge can measure the prosecutor's intent to cause a mistrial by "the situation in which the prosecutor finds himself." 677 P.2d at 271, fn. 9. When things are going well, the prosecutor will seldom want to provoke a mistrial. However, when the case is collapsing around the prosecutor because the witnesses are weaker than expected, adverse rulings have kept out important evidence, or key witnesses cannot be found or did not appear, the trial judge can infer the prosecutor's intent and reach the conclusion that a mistrial was actually desired. The prosecutor's explanation of his intent may be given some credence "in light of the minimum requirements expected of all lawyers." *Id.*, at 677 P.2d at 272. However, ex post facto explanations by the prosecutor will be of minimal assistance to the trial judge in deciding the issue of intent to provoke a mistrial.

This standard is as reasonable and as objective as any other legal standard. Tri-

**32**

al judges and juries decide questions of "intent" all the time.

The "intentional and reckless misconduct with an indifference to the consequences" standard suggested by the defendant does not sufficiently protect society's interest. Certainly, prosecutorial misconduct cannot be condoned. However, there are other avenues for correcting recalcitrant prosecuting attorneys without penalizing the entire society for the error of one governmental agent. For example, professional discipline may be in order. The Code of Professional Responsibility provides that a lawyer should represent a client zealously "within the bounds of the law." Canon 7, Code of Professional Responsibility, adopted as Rule 8, Tennessee Supreme Court Rules. This means that a lawyer appearing before a tribunal shall not "(s)tate or allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence." D.R. 7–106(C)(1), Rule 8, Tennessee Supreme Court Rules. A lawyer is also forbidden to "(i)ntentionally or habitually violate any established rule of procedure or of evidence" when appearing before a tribunal. D.R. 7–106(C)(7), Rule 8, Tennessee Supreme Court Rules. It is unprofessional conduct for a prosecutor knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury to offer inadmissible evidence, ask legally objectionable questions, or make other impermissible comments or arguments in the presence of the judge or jury. *A.B.A. Standards For Criminal Justice* 3–5.6(b) (2d Ed.1980). Our Supreme Court has expressed its desire that trial courts and defense counsel abide by these ABA Standards. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.1975). There is no reason to expect less of the prosecutor. Finally, trial courts have enormous contempt powers to punish prosecuting attorneys who insist on placing inadmissible evidence before the jury after being instructed not to do so.

■ In view of the other sanctions that are available to cure or to mollify the effects of misconduct, the balance tips in favor of following the United States Su-

preme Court's holding in *Oregon v. Kennedy*. Thus, we adhere to that standard. Unless the trial court finds that the prosecutor intended his misconduct to provoke the defendant into requesting a mistrial, the defendant may be retried following the granting of the defendant's motion for a mistrial. Like other findings of fact, his finding will be entitled to the weight of a jury verdict. *State v. Tate*, 615 S.W.2d 161, 162 (Tenn.Cr.App.1981).

■ In this case there is no indication that the prosecutor was attempting to goad the defendant into seeking a mistrial. In fact, the question asked in violation of the motion in limine, while clearly error, was not so egregious that a mistrial was even necessary. A curative instruction to the jury should have been given and the trial should have proceeded.

The judgment of the trial court ordering a retrial is affirmed.

WALKER, P.J., and BYERS, J., concur.