# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 20, 2011

## SENTORYIA LAWAND YOUNG v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Davidson County
### No. 2002-B-952      Mark J. Fishburn, Judge

### No. M2010-01762-CCA-R3-PC - Filed August 18, 2011

The petitioner, Sentoryia Lawand Young, appeals from the Davidson County Criminal Court's denial of his petition for post-conviction relief from his jury conviction of second degree murder and two convictions of aggravated assault. Following our review, we affirm the order of the post-conviction court.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

Hershell D. Koger, Pulaski, Tennessee, for the appellant, Sentoryia Lawand Young.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Renee Erb, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This court, in its opinion on direct appeal of the petitioner's case, outlined the evidence presented at the petitioner's trial. *See State v. Sentorya L. Young*, No. M2005-01873-CCA-R3-CD (Tenn. Crim. App., Nashville, May 12, 2008), *perm. app. denied* (Tenn. 2008).[1] Witnesses recounted in the 2004 trial that after an evening patronizing a "strip club" in 2002, a group of men took two of the female performers to a hotel room to engage in

---

[1]In the trial and direct appeal proceeding, the petitioner's first name is spelled "Sentorya." This post-conviction proceeding now on appeal was commenced by the filing of a petition in which the petitioner spelled his name "Sentoryia." We use the spelling set forth in the lead process in this collateral attack proceeding as filed by the petitioner.

sexual activity. *Id.*, slip op. at 2. Later in the night, a dispute arose among some of the men concerning money missing from the pants of one of the ladies. *Id.* The dispute culminated in the petitioner's shooting three men who were inside a car. Two of the victims were wounded, and the third died. *Id.*

In 2006, the trial court conducted a hearing on the petitioner's petition for a writ of error coram nobis in which the petitioner alleged the discovery of new evidence in the "form of an extraneous and prejudicial chart that went to the jury room during deliberations." *Id.*, slip op. at 3. The chart, apparently prepared by the prosecutor, detailed inconsistencies in the prior statements of trial witness David Clark. Aaron Gray, an "in-court clerk," testified that, in his opinion, the "exhibit was not viewed by the jury during its deliberations." *Id.* Chris Austin, the court officer during the trial, testified that his procedure was to make "sure that only exhibits identified and accepted into evidence went into the jury room." When asked specifically about the chart, Mr. Austin testified, "'What I can say is me and Mr. Gray followed the procedure, but I know that when I brought the exhibits back that was not a piece of it or I would've make someone aware of it.'" *Id.*, slip op. at 4. The attorney assigned the task of pursuing the petitioner's appeal found the chart "[f]olded up inside" exhibit number seven. *Id.* Robert J. Windell testified that he was an intern working in the public defender's office and that he participated in interviewing the jurors who sat on the petitioner's trial. A juror from the trial testified that he vividly remembered the unmarked chart and that he was between "80 and 90 percent certain" that he viewed it in the jury room. *Id.* A second juror confirmed either seeing the unmarked chart during jury deliberations or hearing it discussed during deliberations. *Id*

In the petitioner's post-conviction evidentiary hearing, one of his trial attorneys testified for the petitioner that she moved for and received a mistrial in the petitioner's first trial because a State witness referred to the petitioner's parole status during the witness' testimony. She testified that she did not move to dismiss the case following the declaration of the mistrial and that she represented the petitioner in the second trial. She testified that, in selecting the jury for the second trial, she realized that if she used all of her peremptory juror challenges the trial court would exhaust the venire pool before a jury could be empaneled. She said that because she did not know what would happen in that circumstance, she "made a decision not to continue forward with [her] preemptories [sic] based on being afraid of the unknown." She recalled one prospective juror who announced his belief in front of the entire jury pool that anyone who killed another should be put "on death row" based upon the prospective juror's witnessing as a young child the rape and murder of his mother. Counsel did not recall whether the trial court dismissed this prospective juror for cause. She also recalled that the prospective juror's story was emotionally compelling and prompted other prospective jurors to relate their encounters with crime. One such person had a son who had been shot 11 times. Counsel did not move to strike the remainder of the venire who

heard these personal declarations.

Counsel recalled that one juror slept frequently during the trial. Counsel testified that she could not recall bringing the issue to the court's attention. Counsel testified that she did not know how much the sleeping juror actually slept during the trial.

On cross-examination, counsel agreed that she desired "to see [the petitioner's] case reversed." She denied that she had "design[ed]" her testimony to that end.

She testified that at the time of the petitioner's first trial, she did not know the difference between a mistrial with prejudice and one without prejudice.

Counsel agreed that she did not attempt to impeach Mr. Austin when he testified in the hearing on the petition for writ of error coram nobis. She "thought that calling the judge's court officer a liar probably would've been a (unintelligible) with the judge." She said that she "did not want to cast aspersions on the court officer." She recalled that, in its order denying coram nobis relief, the trial court "relied heavily on Mr. Austin" and that that "did strike hard at [her], since [she] had not impeached Mr. Austin."

Co-counsel for the petitioner during his trial testified for the petitioner that she recalled an issue arising after trial pertaining to a "chart" that had been sent to the jury room during deliberations despite the chart's not having been admitted into evidence. She testified that she asked the court officer, Chris Austin, about the chart and that an office intern was present during this conversation. Mr. Austin told co-counsel that he did not recall what happened "with the chart" and that he would have followed "normal procedures."

Rob Wendell, an attorney in Richmond, Virginia, testified in the post-conviction hearing that in 2006 he interned with the Metropolitan Nashville Office of the Public Defender and assisted in the defense of the petitioner.[2] Mr. Wendell recalled participating in the interview of the court officer, Chris Austin, and that he and co-counsel showed the "chart" to Mr. Austin and asked him whether he recalled the chart's being included in the exhibits that went to the jury room. Mr. Wendell testified that Mr. Austin "didn't have a specific memory one way or the other." Mr. Austin did state that it was his procedure to exclude items that were not admitted into evidence from the materials that went to the jury room. Mr. Wendell agreed that counsel and/or co-counsel had been aware of Mr. Austin's responses and that, during his testimony in the coram nobis hearing, he was not asked about Mr. Austin's prior statements.

_____

[2]Apparently, Mr. Wendell was the same person who testified in the hearing on the petition for writ of error coram nobis and who, in the transcript of that hearing, was referred to as "Robert J. Windell."

On appeal, the petitioner advances claims of ineffective assistance of trial counsel. In his brief, he enumerates his counsels' failure to seek a double-jeopardy-based bar of the retrial following a mistrial, to utilize available peremptory jury challenges, to move to strike a jury pool that had been subjected to prejudicial comments by prospective jurors, and to impeach the testimony of court officer Chris Austin during his testimony in a hearing on the petitioner's petition for coram nobis relief.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual

findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields,* 40 S.W.3d at 457-58; *see also State v.. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

We will review the petitioner's appellate claims of ineffective assistance of counsel according to the specific act or omission claimed.

### *1. Failure to Seek a Mistrial with Prejudice*

In its memorandum opinion, the post-conviction court concluded that trial counsel was "motivated to seek the mistrial as a result of Officer Chad Mahoney's blatant disregard of the [c]ourt's admonitions and instructions, which were clear and unequivocal." The court found no evidence that the prosecutor was "complicit in the acts of the officer" or that any tactical advantage could be gained by the State by prompting a mistrial. The court determined that the petitioner could not have supported a claim that his retrial was barred by principles of double jeopardy.

We agree.

A retrial of a defendant following the declaration of a mistrial may implicate concerns for a violation of principles of double jeopardy. Both the federal and state constitutions protect an accused from being "twice put in jeopardy of life or limb" for "the same offence." U.S. Const. Amend. V; Tenn. Const. art. 1, sec. 10. When a mistrial is declared without the consent of the accused and without the manifest necessity of a mistrial, retrial is barred by double jeopardy principles. *State v. Skelton*, 77 S.W.3d 791, 798-99 (Tenn. Crim. App. 2001); *see State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991) ("Generally a mistrial will be declared in a criminal case only when there is a 'manifest necessity' requiring such action by the trial judge."). "The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." *Id.*

As a component of this constitutional protection, an accused has the right "to have his trial completed by a particular tribunal." *Wade v. Hunter*, 336 U.S. 684, 689 (1949). Nevertheless, the protection is not absolute in the sense of guaranteeing the enforcement of the criminal laws in one proceeding. *See Oregon v. Kennedy*, 456 U.S. 667, 672 (1982). That is, double jeopardy principles do "not go so far as to compel society to so mobilize its decision making resources that it will be prepared to assure the defendant a single proceeding free from harmful governmental or judicial error." *United States v. Jorn*, 400 U.S. 470, 484 (1971). Trial errors, in other words, are addressed through a defendant's right to appeal, not the double jeopardy clause. *See Beringer v. Sheahan*, 934 F.2d 110, 113 (7th Cir.), *cert.*

*denied*, 502 U.S. 106 (1991).

Considering the interests sought to be protected by the double jeopardy clause, it logically follows that if a defendant requests a mistrial, he gives up the right to a verdict by the empaneled jury. Double jeopardy principles, it is recognized, do not bar a retrial in that situation. *See United States v. Dinitz*, 424 U.S. 600, 606-11 (1976). An exception to this general rule exists, however, in the very limited context when prosecutorial misconduct supplies grounds for a defense motion for mistrial, and the misconduct "was intended to provoke the defendant into moving for a mistrial." *Kennedy*, 456 U.S. at 679. "Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Kennedy*, 456 U.S. at 675. This standard "merely calls for the court to make a finding of fact." *Id.* To emphasize the point, the Supreme Court stated,

> We do not by this opinion lay down a flat rule that where a defendant in a criminal trial successfully moves for a mistrial, he may not thereafter invoke the bar of double jeopardy against a second trial. But we do hold that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

*Id.* at 678. The standard set forth in *Oregon v. Kennedy* has been adopted in Tennessee and would have controlled in the petitioner's case. *See State v. Tucker*, 728 S.W.2d 27, 32 (Tenn. Crim. App. 1986).

Whether to grant a mistrial is an issue entrusted to the sound discretion of the trial court. *See State v. McKinney*, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996). The burden of establishing the necessity for mistrial lies with the party seeking it. *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

Although Tennessee courts do not apply any exacting standard for determining when a mistrial is necessary after a witness has injected improper testimony, we have often considered (1) whether the improper testimony resulted from questioning by the State, rather than having been a gratuitous declaration, (2) the relative strength or weakness of the State's proof, and (3) whether the trial court promptly gave a curative instruction. *See State v. William Dotson*, No. 03C01-9803-CC-00105, slip op. at 9 (Tenn. Crim. App., Knoxville, June 4, 1999).

The post-conviction court found that the petitioner failed to show by clear and convincing evidence in the post-conviction proceeding that he would have or could have prevailed on a pretrial double jeopardy argument. The court concluded that, had the double jeopardy issue been raised prior to retrial, it would have determined that the improper testimony about the petitioner's history of parole was a gratuitous declaration and that, essentially, the State's case was relatively strong. Based on such findings, we agree that the petitioner could not have supported a claim that his retrial was barred by principles of double jeopardy. The upshot of that well-based determination by the post-conviction court is that the petitioner failed to establish that he was prejudiced by his trial counsels' failure to raise the double jeopardy bar prior to retrial.

### 2. Failure to Utilize Available Juror Challenges and to Challenge the Venire

The post-conviction court, in its memorandum opinion, noted that Tennessee Code Annotated section 22-2-308(a)(2) governs the procedure for obtaining additional prospective jurors when a regular venire is depleted. Although the court commented that trial counsel should have known about this provision, it held that the petitioner failed to show either how he "was prejudiced by counsel's failure to exercise any additional challenges" or how the venire was adversely affected when a prospective juror "related the chilling events of his mother's rape and murder." The post-conviction court held that no evidence indicated that "the remaining jurors were swayed in their ability to be fair and impartial."

We agree. Upon the record, we discern no showing of prejudice as a premise for ineffective assistance of counsel based upon counsel's failure to exercise additional peremptory challenges or to object to the empaneling of jurors who heard comments from prospective jurors.

### 3. Failure to Impeach the Testimony of Chris Austin

The post-conviction court stated in its memorandum opinion that, in rejecting the petitioner's bid to obtain coram nobis relief following trial, the court "evaluated the merits of the claim assuming the non-existent documents had in fact been erroneously submitted to the jury and concluded that it would have been harmless because there is no reasonable basis to believe that the omission of this chart may have led to a different [verdict]." As noted by this court in *Sentorya L. Young*, the coram nobis court found that

> the extraneous information was created by the assistant district
> attorney in open court in front of the jury representing a synopsis
> of the witness' testimony given in open court in front of the jury
> . . . . There is nothing extraneous about what was contained in

the document and no inference could be drawn that any of the
information was endorsed by the district attorney general or the
Davidson County Grand Jury.

*Sentorya L. Young*, slip op. at 15. The coram nobis court also opined that the "chart" could not have brought to the jury's attention "evidence not otherwise presented to them." *Id.*, slip op. at 15-16.

The post-conviction court also concluded that, based upon the opinion of the court of criminal appeals, the coram nobis issue was "meritless." Indeed, the court of criminal appeals on direct appeal held that the petitioner, as the appellant on direct appeal, "failed to establish that the subsequently or newly discovered evidence might have resulted in a different judgment had it been presented at the trial" and that it agreed "with the rationale provided by the trial court in its extensive and thorough order." *See id.*, slip op. at 16.

The issue of trial counsels' failure to impeach the testimony of Chris Austin as ineffective assistance of counsel was not previously determined by the trial or appellate courts, but those courts did determine that the petitioner, in his coram nobis proceeding, failed to establish that the jury's exposure to the "chart" may have resulted in a judgment different from what would have resulted had it been kept from the jury's view. Because the withholding of the chart from the jury could not have resulted in a different verdict, coram nobis relief was not availed to the petitioner, *see* T.C.A. § 40-26-105, and because coram nobis relief would not have been granted, the petitioner in his post-conviction proceeding has failed to establish that he was prejudiced by any deficient performance by counsel in handling the coram nobis proceeding.

*Conclusion*

The result of our analyses is that the record supports the post-conviction court's conclusions that the petitioner failed to establish the prejudice requisite to making an ineffective assistance of counsel claim. Accordingly, the order of the criminal court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE