IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 9, 2024

**STATE OF TENNESSEE v. TALVIN D. ARMSTRONG**

**Appeal from the Circuit Court for Maury County**
**No. 27870     Stella Hargrove, Judge**

_____

**No. M2022-01164-CCA-R3-CD**

_____

A Maury County jury found Defendant, Talvin D. Armstrong, guilty of one count of possession of 0.5 grams or more of cocaine with intent to sell and one count of possession of drug paraphernalia.  The trial court imposed an effective sentence of fifteen years in the Tennessee Department of Correction (TDOC).  On appeal, Defendant argues that: (1) he was coerced into waiving his confrontation rights as to two witnesses who contracted COVID-19 and were permitted to testify at trial remotely; (2) the trial court erred in introducing the affidavit of complaint supporting the search warrant for the house where the drugs and paraphernalia were found; and (3) he was entitled to a mistrial based on a witness's reference to the Department of Probation and Parole.[1]  After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and JILL BARTEE AYERS, J., joined.

John S. Colley, III, Columbia, Tennessee (on appeal), and Mark L. Puryear, III, and Robert E. Lee Davies, Jr., Franklin, Tennessee (at trial), for the appellant, Talvin D. Armstrong.

Jonathan Skrmetti, Attorney General and Reporter; Brooke A. Huppenthal, Assistant Attorney General; Brent Cooper, District Attorney General; and Jonathan Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] We have reordered Defendant's issues for clarity.

# OPINION

## I. Background

This case stems from the search of a home where Defendant was located during which drugs and money were seized. At the time of the search, Defendant was on probation. The facts and circumstances surrounding Defendant's arrest and the subsequent seizure are not in dispute, and Defendant does not challenge the sufficiency of the evidence which we briefly summarize below.

On July 23, 2019, Matt Thomas, a probation and parole officer with TDOC, responded to a house located at 926 Nash's Nook in Columbia based on a previous tip involving suspicious activity. He was accompanied by several members of the Maury County Drug Task Force. Defendant greeted Officer Thomas in the garage and agreed to allow the officers inside the house but "wanted to go check on his family first." Three of Defendant's family members, along with Defendant's uncle, were inside the house.

Officer Thomas and Sergeant Joey Parks of the Maury County Sheriff's Department (MCSD) followed Defendant into the house. As Defendant, Officer Thomas, and Sergeant Parks entered the house, Officer Thomas noticed Defendant "started becoming excited, getting nervous." Instead of looking for his family, Defendant entered a closet in the master bedroom, began "fiddling with a shelf," and "kicking clothes around." Based on Defendant's behavior, Sergeant Parks said "it became obvious to me that we were no longer looking for his family." Officer Thomas and Sergeant Parks placed Defendant and his family members in the living room while MCSD Sergeants Jeff Wray and Chris Bishop searched the house. Officers observed a plastic bag containing a substance later confirmed to be 63.67 grams of cocaine and cash inside a puffy red jacket in the master bedroom closet. Officers also found scales and envelopes addressed to Defendant at the Nash's Nook address and suspected marijuana in a bathroom drawer. This prompted the officers to obtain a search warrant for the house. In the search following the warrant, officers found additional cash hidden in two other items of clothing in the bedroom closet, and a total of $9,262 was recovered from the home. In the master bedroom, officers found a second bag of suspected marijuana, and underneath the sink in the master bathroom, officers found suspected cocaine in coffee filters. In an upstairs room, officers found scales, scissors, a marijuana grinder, and several thirty-milligram tablets, seven of which were presumptively identified as amphetamines by their "markings to pharmaceutical references."

Defendant's uncle claimed ownership of the cocaine recovered from the home at the time of the search and at trial. He testified that he "stayed" at the house at the time of the search and worked for Defendant's grass cutting and landscaping business. Defendant's uncle claimed he placed the bag of cocaine in the pocket of the red jacket to hide the drugs from the officers, and that the other family members did not know the drugs were present.

However, Sergeant Bishop testified that while other officers searched the house, he "asked [Defendant's uncle] very simple, direct, and specific questions about the narcotics that were found, where they were found, and the weight of those narcotics," but the Defendant's uncle was unable to answer them.

Based on the above proof, the jury found Defendant guilty of possession of 0.5 grams of cocaine or more with intent to sell (count one) and possession of drug paraphernalia (count three) but acquitted him on two other misdemeanor drug-related counts. The trial court imposed an effective sentence of fifteen years in TDOC custody, to be served consecutively to an unrelated offense that Defendant was serving at the time of the offense. This appeal followed.

## II. Analysis

### A. Defendant's Waiver of Confrontation Rights

On February 2, 2022, the morning of the first day of trial, the parties and trial court learned that two of the State's witnesses had contracted COVID-19. The State requested a continuance because it wanted to present the testimony of these witnesses in person. As will be discussed more fully below, the trial court expressed concern with continuing the case and stated that if a continuance were to be granted it would revisit the earlier ruling suppressing the evidence from the second phone search. Defendant, after questioning by his attorney, waived his right to confront the witnesses and agreed to proceed to trial with the two witnesses appearing by Zoom video conference. On appeal, Defendant argues that the waiver of his right to confront these witnessed was "coerced." Based on the above comment by the trial court, Defendant asserts that "if he did not waive his confrontation rights, and thereby forced a continuance of the trial because two State witnesses had COVID, [the court] would reconsider [its] earlier rulings in his favor wherein [it] suppressed his cell phone [search]." In response, the State contends this issue is waived because Defendant did not object at trial.

The record reflects Defendant raised this issue in his motion for new trial, but we agree with the State, and conclude this issue is waived because Defendant did not object contemporaneously at trial. According to the Tennessee Supreme Court:

> "[A]ppellate review generally is limited to issues that a party properly preserves for review by raising the issues in the trial court and on appeal." *State v. Minor*, 546 S.W.3d 59, 65 (Tenn. 2018) (citing Tenn. R. Crim. P. 51; Tenn. R. Evid. 103(a)-(b); Tenn. R. App. P. 3(e), 13(b), 27(a)(4), 36(a); *State v. Bledsoe*, 226 S.W.3d 349, 353-54 (Tenn. 2007)). This obligation to preserve issues applies to constitutional issues as well as non-constitutional ones. *Id.* (citing *United States v. Olano*, 507 U.S. 725, 731, 113 S. Ct. 1770,

123 L. Ed.2d 508 (1993)).  These preservation requirements "ensure that the defense and the prosecution are afforded an opportunity to develop fully their opposing positions on an issue, and such requirements also enable a trial court to avoid or rectify an error before a judgment becomes final."  *Id.* (citing *Puckett v. United States*, 556 U.S. 129, 134, 129 S. Ct. 1423, 173 L.Ed.2d 266 (2009); *State v. Bishop*, 431 S.W.3d 22, 43 (Tenn. 2014); *State v. Jordan*, 325 S.W.3d 1, 57-58 (Tenn. 2010)).

*State v. Vance*, 596 S.W.3d 229, 253 (Tenn. 2020) (holding that a defendant's contemporaneous objection, which did not state specific legal grounds, did not preserve his Confrontation Clause argument for plenary review even when he raised the issue in a motion for new trial).  Similarly, in *State v. Enix*, our supreme court held "that a defendant's failure to contemporaneously object to alleged prosecutorial misconduct during closing argument results in waiver of the issue on appeal."  653 S.W.3d 692, 698-701 (Tenn. 2022).

Based on this precedent, we conclude that Defendant's issue is waived.  We observe Defendant did not argue plain error in his initial brief, and he did not file a reply brief in response to the State's waiver argument.  When an issue is waived on appeal, this court may only review the issue for plain error.  *See State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000).  This court will grant relief under plain error only if an appellant can establish all of the following:

> (a) the record must clearly establish what occurred in the trial court;
> (b) a clear and unequivocal rule of law must have been breached;
> (c) a substantial right of the accused must have been adversely affected;
> (d) the accused did not waive the issue for tactical reasons; and
> (e) consideration of the error is necessary to do substantial justice.

*Id.* (internal quotation omitted) (citing *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)).  "Because each factor must be established, [an appellate court] need not consider all five factors when a single factor indicates that relief is not warranted." *State v. Fayne*, 451 S.W.3d 362, 372 (Tenn. 2014) (citing *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007)).  "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error."  *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006).

Some context is necessary for the resolution of this issue.  Prior to trial, evidentiary hearings on several pretrial motions were conducted by the trial court.  On August 4, 2020, the trial court held a hearing on Defendant's motion to suppress the search of Defendant's home, and the trial court issued an order denying Defendant's motion on August 12, 2020.

On July 16, 2021, Defendant filed a motion to suppress evidence gained as a result of a search and seizure of Defendant's phone. On August 26, 2021, the trial court conducted a pretrial hearing on the motion to suppress the search of Defendant's phone. After the hearing, the trial court granted the motion based on the State's failure to properly file the and return the warrant within five days. The State subsequently obtained a second search warrant for the contents of the same phone and filed a superseding indictment based on the second search warrant. However, the State notified defense counsel five days before trial that it had completed a second search of Defendant's phone. In response, defense counsel filed a motion to continue the trial noting that he had not received the evidence from the second search and that he needed time to review it.

On January 28, 2022, the trial court held a hearing to address Defendant's motion to continue. The court expressed concern with the delay in seeking the superseding indictment and in obtaining the second search warrant of Defendant's phone. The State believed it had properly obtained the second search warrant and explained it had not reviewed the results of the second search of Defendant's phone. Defense counsel told the court that he had a copy of the phone's contents but had not reviewed it. Defense counsel also said he had not seen the second search warrant. The trial court entertained an oral motion from Defendant to dismiss the superseding indictment and to exclude the information obtained from the second search warrant. To expedite the trial and to be fair to Defendant, the trial court dismissed the superseding indictment and excluded the information from the second search of Defendant's phone. The trial court granted Defendant's second motion to suppress the second search of Defendant's phone based solely on the State's delayed disclosure of the information to Defendant.

On February 2, 2022, the morning of trial, the State informed defense counsel and the trial court that both Sergeants Parks and Wray had contracted COVID-19. The State requested a continuance of the trial because Sergeant Parks was "a material witness and need[ed] to testify in person." The trial court stated, "If we continue this case, I'm [going to] revisit the [second phone] dump search warrant." The court added, "I'm not really comfortable in my ruling except for the timing of this trial and late discovery. I rethought that, and I may want to revisit that . . . and consider that dump." The trial court acknowledged, "I know the State wants that in, and I feel comfortable with the timing and scheduling that on this trial. But I'm just—I never had a case in [twenty-three] years where you reissue the search warrant." Defense counsel insisted he was ready to proceed with trial and would discuss the confrontation rights with the Defendant. The record reflects the following colloquy between Defense counsel and Defendant:

> [COUNSEL]: Just for purposes of this issue, we discussed [Sergeant] Parks maybe not being here, correct?
>
> [DEFENDANT]: Yes, sir.

[COUNSEL]: And we discussed if he's not here that we could ask the [c]ourt for him to be here in person, and if he couldn't be here, you have a constitutional right for him to be here?

[DEFENDANT]: Yes, sir.

[COUNSEL]: And we've discussed all the issues going forward with this trial today, not going forward, other discussions about this case, correct?

[DEFENDANT]: Correct.

[COUNSEL]: And your decision is to waive your constitutional right to have [Sergeant] Parks here in person and allow him to testify via Zoom; is that right?

[DEFENDANT]: Correct.

[COUNSEL]: Okay. [Sergeant Wray] was with [Sergeant] Parks at your house, and so the State is gonna put [Sergeant] Parks on via Zoom.

[DEFENDANT]: Uh-huh.

[COUNSEL]: And you're gonna waive your right to have him here in person. Okay? Is that right?

[DEFENDANT]: That's right.

　　. . . .

[COUNSEL]: So [Sergeant Wray] may not be able to be in person too, and the State may want to call him. Will you waive your constitutional right to have [Sergeant Wray] here in person also?

[DEFENDANT]: Yeah.

[COUNSEL]: Do you understand that?

[DEFENDANT]: Yeah, I understand, yes, sir.

[COUNSEL]: Okay. So, in other words, if we object to something with [Sergeant] Parks and he can get it in through [Sergeant Wray], he's gonna want to call [Sergeant Wray]. Do you understand that?

[DEFENDANT]: Yes, sir, I understand.

[COUNSEL]: Okay. So my question to you is, do you waive your constitutional right to have [Sergeant Wray] come in face to face if, in fact, the [c]ourt finds that he can't come in face to face and would have to testify via Zoom?

[DEFENDANT]: I'm okay.

THE COURT: [Defendant], thank you. Thank you very much.

We conclude Defendant is not entitled to plain error relief. Defendant has failed to establish the violation of a clear and unequivocal rule of law. Both the United States and Tennessee Constitutions give an accused the right to face the confront the witnesses against him at trial. *See* U.S. CONST. amend. VI; TENN. CONST. art. I, § 9. However, while there is a "long-standing presumption against waiver of fundamental constitutional rights," such rights may be "personally waived by a defendant." *State v. Blackmon*, 984 S.W.2d 589, 591 (Tenn. 1998) (citing *State v. Muse*, 967 S.W.2d 764, 767 (Tenn. 1998)). "In order for a waiver of a constitutionally granted right to be valid, it must be 'voluntarily, knowingly, and intelligently' given." *Id.* (citing *State v. Middlebrooks*, 840 S.W.2d 317, 326 (Tenn. 1992)). "[T]he relinquishment of [a constitutional] right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Additionally, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

The colloquy between Defendant and his attorney made clear to the trial court that Defendant and his attorney had discussed Defendant's right to confrontation and the possibilities of either proceeding to trial with the two witnesses testifying by Zoom or continuing the trial. Defendant affirmatively stated he understood his confrontation rights and that by waiving those rights, Sergeants Parks and Wray would testify against him by Zoom. Defendant then waived his confrontation rights, and the trial proceeded as scheduled. We conclude Defendant entered a knowing and voluntary waiver of his confrontation rights.

We also conclude that the trial court's actions did not adversely affect a fundamental right of the accused, nor is consideration of the issue necessary to do substantial justice. The trial court stated it would revisit its decision regarding the second search of

Defendant's phone if the case were continued, and Defendant has provided this court with no authority that doing so would have been improper. The record shows the trial court granted the first motion to suppress the phone records from the first search warrant on Defendant's phone for failure to timely return or file the warrant. After the trial court granted the first motion to suppress, the State obtained a second search warrant for the same phone and obtained a superseding indictment. The State did not provide defense counsel with a copy of the second search warrant or the contents of the phone examination until five days before trial. Defense counsel then filed a motion to continue based on the State's failure to provide him with the evidence. At the hearing on the motion, the trial court was concerned with the propriety of the second search warrant; however, due to the age of the case and the untimely disclosure, the trial court dismissed the superseding indictment and granted defense counsel's oral motion to suppress the contents of the second phone examination. The State unsuccessfully requested the court to reconsider given the importance of the evidence obtained from the second phone examination.

In our view, the decision to forego an objection to the State's witnesses testifying via Zoom clearly reflects a deliberate, tactical trial strategy which enabled Defendant to proceed to trial without the damaging evidence obtained from the second search of his phone. Rather than being coerced, Defendant reaped the benefit of the State's failure to timely comply with the rules of court. Accordingly, we conclude Defendant is not entitled to plain error relief on this issue.

### B. Admission of Affidavit Accompanying Search Warrant

Defendant next asserts the trial court erred in admitting into evidence the affidavit that was attached to the search warrant for the Nash's Nook home because it was hearsay. Defendant argues the affidavit contained information that may have been "the only evidence of ownership of the residence in the record." In response, the State argues, and we agree, that Defendant failed to object to the affidavit based on hearsay at trial.

The record reflects that before Sergeant Bishop's testimony, a jury-out hearing was held during which defense counsel informed the trial court that the State intended to introduce both the search warrant for the house and a redacted version of the affidavit of complaint supporting the search warrant. Defense counsel did not object to the search warrant; but he argued admission of the affidavit would confuse the jury and was unnecessary. The State argued the affidavit was "part and parcel" with the search warrant. The trial court agreed to redact certain sections of the affidavit identified by Defendant, and the redacted affidavit was introduced as an exhibit at trial. Accordingly, the Defendant did not object to the admission of the affidavit based upon hearsay.

"[A] party is bound by the ground asserted when making an objection. The party cannot assert a new or different theory to support the objection in the motion for a new trial

or in the appellate court." *Adkisson,* 899 S.W.2d at 634-35*; see also State v. Aucoin*, 756 S.W.2d 705, 715 (Tenn. Crim. App. 1988) (holding that "a defendant may not object to the introduction of evidence on one ground, abandon this ground, and assert a new basis or ground for the objection in this Court"). Thus, the issue is waived on appeal, and Defendant is limited to plain error review. As with his first issue, Defendant failed to request plain error review or file a reply brief in response to the State's waiver argument.

Applying the above legal framework for plain error, we conclude Defendant is not entitled to relief. As we understand Defendant's argument, he claims the affidavit contained evidence that he owned the home. To the extent that admission of the affidavit was error, we conclude that it was harmless beyond a reasonable doubt given the other proof of ownership and the overwhelming evidence of Defendant's guilt. The officers found several letters addressed to Defendant at the Nash's Nook address where the drugs, cash, and drug paraphernalia were located. Defendant is not entitled to relief.

## C. Trial Court's Denial of Mistrial

Defendant asserts the trial court erred in denying his motion for a mistrial with prejudice after Sergeant Parks testified that probation officers were present during the search of the Nash's Nook house. We disagree.

Before trial, the parties agreed that no reference would be made to the fact that Defendant was on probation at the time of these offenses. Per the stipulation, the jury was informed that Officer Thomas was a "certified officer with the State of Tennessee" and that law enforcement had "a lawful reason and ability to go to this address" and "search the premises lawfully while they were there." However, at the end of defense counsel's cross-examination of Sergeant Parks, the following exchange occurred:

[COUNSEL]: Do you know if anyone else was present when [Sergeant] Bishop interviewed [Defendant's uncle] ?

[SERGEANT PARKS]: I don't recall. I mean, there was—Board of Probation was there. My office was there. Officers were in and around. However, we had some other things. The interviews that took place were by Case Agent Chris Bishop.

[COUNSEL]: Thank you. May it please the Court—

[SERGEANT PARKS]: And the Board of Probation and Parole.

The parties then engaged in a sidebar conference during which the trial court asked the prosecutor, "Didn't you tell him not to say that?" The prosecutor acknowledged, "I've not had any contact with [Sergeant] Parks today." After the trial court sent the jury out,

defense counsel requested to "reserve the right to file a motion for a mistrial with prejudice but keep going forward today and allow me time to research that issue." Defense counsel stated he was "not prepared to argue from a legal standpoint my complete position on it . . . . I'm not asking for at this time a mistrial without prejudice." During its immediate response, the trial court stated, "This has arose to manifest injustice; we all know that." Defense counsel stated he would not request a curative instruction, as "that would draw more attention to" Sergeant Parks' testimony "and make it worse." After the prosecutor stated he was not aware of any legal authority to allow defense counsel to reserve his motion for mistrial, the trial court told defense counsel "you should . . . either move or not move for a mistrial arguing manifest injustice at this point. If not, you're waiving your motion." Defense counsel then made "a motion for mistrial for manifest injustice with prejudice[.]" The trial court responded, "At this point, the [c]ourt finds that your motion for mistrial with prejudice does not rise to manifest injustice, and so I'll deny the motion."

"The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). "[T]he granting of a mistrial is a matter resting within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion; 'normally, a mistrial should be declared only if there is a manifest necessity for such action.'" *State v. Nash*, 294 S.W.3d 541, 546 (Tenn. 2009) (quoting *State v. Saylor*, 117 S.W.3d 239, 250-51 (Tenn. 2003)). A manifest necessity occurs when "no feasible alternative to halting the proceedings" exists. *State v. Knight*, 616 S.W.2d 593, 596 (Tenn. 1981). "When determining whether a mistrial is necessary because inappropriate testimony was presented to the jury, this court considers the following nonexclusive factors: (1) whether the state elicited the testimony; (2) whether the trial court gave a curative instruction; and (3) the relative strength or weakness of the state's proof." *State v. March*, 494 S.W.3d 52, 78 (Tenn. Crim. App. 2010) (internal quotation omitted).

"Moreover, the burden of establishing the necessity for a mistrial lies with the party seeking it." *State v. Reid*, 164 S.W.3d 286, 342 (Tenn. 2005) (appendix). "Unless the trial court finds that the prosecutor intended his misconduct to provoke the defendant into requesting a mistrial, the defendant may be retried following the granting of the defendant's motion for a mistrial." *State v. Tucker*, 728 S.W.2d 27, 32 (Tenn. Crim. App. 1986).

We conclude that the trial court properly found there was not a manifest necessity requiring a mistrial. In support of this issue, Defendant relies on (1) "the apparently conflicting statements of the trial court"; and (2) the implication by the trial court that a continuance would prompt the court to revisit its suppression ruling on the second search of his phone. In our view, the trial court's initial comment reflects the court's recognition of the witness's reference to probation, and not a determination of manifest necessity. The trial court's subsequent statement and request for argument from defense counsel also

- 10 -

shows the trial court was not "conflicted," as argued by Defendant. The record reflects the witness stated an officer from "the Board of Probation and Parole" was present and did not advise the jury that Defendant was on probation. The reference to probation was isolated, not elicited by the State, and at the end of defense counsel's cross-examination. *See State v. Bell*, 512 S.W.3d 167, 188 (Tenn. 2015) (brief references to the defendant's prior incarceration did not preclude an impartial verdict and did not create a manifest necessity for a new trial). Defendant declined to request a curative instruction based on his concern it would have focused the jury on the testimony.

Additionally, the proof supporting Defendant's conviction—the sufficiency of which Defendant does not challenge on appeal—was strong. Officers found a bag of cocaine in a closet next to a shelf continuing letters addressed to Defendant at the address searched. The officers also found $9,262 in cash and drug paraphernalia in the form of scales and a marijuana grinder. As the State argues in its brief, Defendant's uncle claimed the drugs were his, but was unable to answer questions concerning the drugs' appearance, weight, worth, or location in the house. This theory was also advanced at trial by Defendant and rejected by the jury. To the extent Defendant argues he was unable to move for a mistrial based on the trial court's comment that a continuance would enable the court to revisit the prior suppression ruling, we have already determined there was nothing improper about this comment, and Defendant has failed to provide this court with any authority to the contrary.

In consideration of the above, we conclude there was no manifest necessity for granting a mistrial, and thus the trial court did not abuse its discretion in denying Defendant's motion for a mistrial. He is not entitled to relief on this issue.

III. Conclusion

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
MATTHEW J. WILSON, JUDGE