NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GUY RUSSELL GURRIERI, *Appellant.*

No. 1 CA-CR 15-0136
FILED 11-29-2016

Appeal from the Superior Court in Maricopa County
No. CR2013-003333-001
The Honorable John R. Ditsworth, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Robert A. Walsh
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Judge Peter B. Swann and Judge Patricia A. Orozco joined.

**G O U L D**, Judge:

¶1          Guy Russell Gurrieri appeals his conviction and sentence for burglary in the third degree.  For the reasons that follow, we affirm.

### BACKGROUND[1]

¶2          At approximately 2:30 p.m. on April 10, 2013, an officer was on routine patrol when he approached the victim's warehouse.  As he drove up to the property, he observed an open, roll-up garage door, a white van, a white pickup truck with a large trailer attached, and four men (Gurrieri, Theodore Luciow, William McKeever, and Amos Walker) "moving about." Undetected for a few moments, the officer saw Gurrieri repeatedly enter and exit the warehouse, carrying large items and placing them into the van. The officer also saw McKeever and Luciow exit the warehouse.

¶3          Before long, Luciow, McKeever, and Walker appeared to notice the officer; as a result, they got into the truck and began to drive away.  The officer, however, blocked their exit with his patrol vehicle and detained them.

¶4          Based on his previous contact with the victim, the officer knew that no one was permitted on the property.  Nonetheless, he called the victim and confirmed that none of the men were authorized to enter the warehouse or remove property.  The officer then arrested all of the men.

¶5          Following the arrests, police obtained a search warrant.  They searched the van and truck, and recovered numerous items belonging to the victim from both vehicles.  Police also found various tools, including pliers, vise grips, hand cutters, glass cutters, and wrenches.

---

[1]      We view the facts in the light most favorable to sustaining the verdict. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

**¶6**         The State charged Gurrieri and the other men with burglary in the third degree, criminal damage, and possession of burglary tools.[2]

**¶7**         At trial, the victim testified that he purchased the warehouse in 1990 and used it to store aircraft equipment, vehicles, and other large items. He denied knowing any of the defendants and stated he did not give anyone permission to enter his warehouse. He also confirmed that the property seized from the van and truck belonged to him, and stated that the last time he left the warehouse, the roll-up door had been secured by chains and padlocks.

**¶8**         Gurrieri was the only defendant to testify at trial. He explained that he earns a living by performing odd jobs, primarily junk removal. Gurrieri testified that on April 6, 2013, while working at a junk removal site, he was approached by a man who identified himself as the victim's son. The man allegedly offered Gurrieri work performing bulk trash cleanup at the victim's warehouse. Gurrieri testified that he did not find the request unusual or suspicious, and agreed to perform the work. He told the man he would start work on April 10, 2013, and wrote down the man's name and phone number.

**¶9**         Because the job was quite substantial, Gurrieri asked his friend, Veronica, to find some additional workers to help him. At 7:00 a.m. on April 10, 2013, Gurrieri arrived in his van at the victim's property and found the warehouse unlocked. Although the victim's son was not there, Gurrieri testified he did not think this was suspicious, and he began removing junk metal from the warehouse. After Gurrieri had worked for approximately six hours, Luciow, McKeever, and Walker arrived in a truck. Gurrieri immediately noticed that Luciow was quite ill and unable to perform any work. The other men were able-bodied, but Gurrieri testified that neither of them entered the warehouse or otherwise helped him.

**¶10**         Within an hour of their arrival, Luciow, McKeever and Walker left. After Gurrieri saw the other men drive away, he began closing the warehouse; shortly thereafter, an officer approached and arrested him. Gurrieri testified that during his questioning by the police, he learned for the first time that he did not have permission to be on the victim's property.

---

[2]         Before trial, the State moved to dismiss the criminal damage charge against all defendants, which the trial court granted.

**¶11**     During the State's rebuttal, the victim's son testified that he was not in Arizona in April 2013.  He also testified that he does not know Gurrieri and never gave anyone permission to enter his father's warehouse.

**¶12**     The jury found Gurrieri guilty of burglary in the third degree and not guilty of possession of burglary tools.  The jury acquitted the other defendants of all charges.  The trial court sentenced Gurrieri to a three-year term of probation.  Gurrieri timely appealed.

## DISCUSSION

### I.     Motion to Sever

**¶13**     Before trial, Gurrieri moved to sever his trial from his co-defendants.  Following an evidentiary hearing, the court denied the motion.  The court also denied Gurrieri's renewal of the motion during trial.

**¶14**     We review a trial court's denial of a motion to sever for an abuse of discretion.  *State v. Prince*, 204 Ariz. 156, 159, ¶ 13 (2003).  Pursuant to Arizona Rules of Criminal Procedure ("Rule") 13.3(b), joinder of two or more defendants is permissible "when each defendant is charged with each offense included, or when the several offenses are part of a common conspiracy, scheme or plan or are otherwise so closely connected that it would be difficult to separate proof of one from proof of the others."

**¶15**     Joinder was proper in this case.  All of the defendants were charged with the same offenses.  In addition, there was substantial overlapping evidence implicating each of the defendants.  The arresting officer observed all of the defendants "moving about" on the victim's property, and police recovered the victim's property from both Gurrieri's van and the truck.  Likewise, the victim and his son testified that they did not give permission to defendant or any of the co-defendants to enter the property.

**¶16**     We also reject Gurrieri's argument that severance was required in this case.  Because "joint trials are the rule rather than the exception," *State v. Murray*, 184 Ariz. 9, 25 (1995), when defendants are properly joined under Rule 13.3(b), severance is required only if "necessary to promote a fair determination of the guilt or innocence of any defendant[.]"  Ariz. R. Crim. P. 13.4(a).  To succeed in challenging a denial of severance, a defendant "must demonstrate compelling prejudice against which the trial court was unable to protect."  *Murray*, 184 Ariz. at 25 (internal citation omitted).  Such prejudice occurs when: (1) evidence admitted against one defendant is facially incriminating to another

defendant; (2) evidence admitted against one defendant has a harmful rub-off effect on the other defendant; (3) there is significant disparity in the amount of evidence introduced against the defendants; or (4) co-defendants present "antagonistic, mutually exclusive defenses[.]" *Id.*

**¶17**        Of these enumerated factors, Gurrieri argues only that the nature of his co-defendants' defenses mandated severance. Gurrieri contends his co-defendants suggested he may have lied to them about having permission to be on the property, which undermined his claim that he reasonably believed he was authorized to perform work at the warehouse.

**¶18**        "[T]he mere presence of hostility between co-defendants, or the desire of each co-defendant to avoid conviction by placing the blame on the other," does not compel severance. *State v. Cruz*, 137 Ariz. 541, 544 (1983). Instead, severance is required only when defenses are "antagonistic to the point of being mutually exclusive," that is, "only when competing defenses are so antagonistic at their cores that both cannot be believed." *Id.* at 544-45.

**¶19**        When Gurrieri testified, the prosecutor confronted him with statements he made immediately following his arrest, in which he initially stated Veronica hired him to perform cleanup work at the warehouse, and then claimed the co-defendants hired him to do the work. During the State's rebuttal, McKeever's attorney referred to these statements and asked the arresting officer whether it was possible Gurrieri may have also "told [the co-defendants] things to get them to believe things." The prosecutor immediately objected, the court sustained the objection, and defense counsel ended his cross-examination. We cannot say this isolated, unanswered question posed by McKeever's attorney was so antagonistic as to cause prejudice warranting severance.

**¶20**        During closing argument, McKeever's attorney stated that he did not "know what happened with Mr. Gurrieri," and argued that even if the jurors found "an inconsistency with his story," the evidence presented at trial demonstrated McKeever had no knowledge that his presence at the victim's property was unlawful. Although this argument recognized that jurors may not find Gurrieri's conflicting stories credible, neither McKeever's attorney nor any of the other defense attorneys argued that Gurrieri had misled or deceived their clients. Instead, counsel for each co-defendant argued that his client was merely present and had no knowledge that Gurrieri lacked permission to be on the property. Counsel also offered

Gurrieri's testimony that none of the co-defendants entered the warehouse or assisted him as exculpatory evidence for their clients.

¶21      Thus, the co-defendants' mere presence and lack of knowledge defenses were not overtly antagonistic toward Gurrieri, and did not defeat his claim that he believed his presence and actions on the victim's property were authorized. Instead, the jury could have believed the co-defendants' claims of mere presence, lack of knowledge, and reasonable reliance on Gurrieri's representations without disbelieving Gurrieri's claim that he had permission to be on the property.

¶22      Additionally, the court properly instructed the jurors to separately consider the evidence against each defendant, and we presume the jurors followed those instructions. *See Murray*, 184 Ariz. at 25 (explaining a properly instructed jury "is presumed to have considered the evidence against each defendant separately"). Therefore, the court did not abuse its discretion by denying Gurrieri's motion to sever.

## II.    Prosecutorial Misconduct

¶23      Gurrieri argues the court erred by denying his motion for mistrial based on prosecutorial misconduct.

¶24      We review the denial of a motion for mistrial for an abuse of discretion. *State v. Jones*, 197 Ariz. 290, 304, ¶ 32 (2000). Because a "declaration of mistrial is the most dramatic remedy for trial error," it should be granted "only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Adamson*, 136 Ariz. 250, 262 (1983).

¶25      To prevail on a claim of prosecutorial misconduct, a defendant "must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Roque*, 213 Ariz. 193, 228, ¶ 152 (2006) (quoting *State v. Hughes,* 193 Ariz. 72, 79, ¶ 26 (1998)). "Reversal on the basis of prosecutorial misconduct requires that the conduct be so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id*.

¶26      Prosecutorial misconduct is not "merely the result of legal error, negligence, mistake or insignificant impropriety." *Pool v. Superior Court*, 139 Ariz. 98, 108 (1984). Rather, viewed in its entirety, it is "intentional conduct" that the prosecutor "knows to be improper and prejudicial, and which he pursues for any improper purpose." *Id*. at 108-09.

### A. Vouching

**¶27** Gurrieri asserts the prosecutor improperly vouched for the arresting officer and the State's case.

**¶28** During her opening statements, the prosecutor remarked that the defendants had the misfortune of burglarizing a property patrolled by a "diligent, conscientious officer" and stated the men would have successfully stolen the victim's property if that "diligent officer" had not discovered their wrongdoing. Defense counsel objected on the grounds of vouching, and the court admonished the prosecutor that her opening statements were "supposed to be non-argument." Later, during closing arguments, the prosecutor told the jurors that they had a "simple case" to decide. Defense counsel again raised a vouching objection, which the court overruled.

**¶29** "There are two types of prosecutorial vouching: (1) when the prosecutor places the prestige of the government behind its witness, and (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony." *State v. Duzan*, 176 Ariz. 463, 467 (App. 1993) (internal quotation omitted). A prosecutor places the prestige of the government behind a witness by personally assuring the jury of the witness's veracity. *See State v. Dumaine*, 162 Ariz. 392, 401 (1989), *disapproved on other grounds by State v. King*, 225 Ariz. 87 (2010).

**¶30** Here, based on the evidence, the prosecutor favorably characterized the officer's job performance and investigative approach. She did not express a personal belief regarding his penchant for truthfulness. Nor did she suggest that information unknown to the jury supported the officer's testimony or the State's theory of the case. Accordingly, these statements did not constitute improper vouching.

### B. Burden Shifting

**¶31** Gurrieri contends the prosecutor impermissibly shifted the burden of proof to the defense.

**¶32** The prosecutor questioned Gurrieri regarding his failure to provide the police with contact information for both Veronica or the victim's son after his arrest. Defense counsel raised a burden shifting objection, which the court sustained. On recross-examination, the prosecutor again asked Gurrieri whether he disclosed Veronica's contact information "at any time" and Gurrieri answered, without objection, that he did not. An officer also testified, without objection, that he asked

Gurrieri to provide contact information for Veronica and the victim's son, and Gurrieri failed to do so. During closing argument, the prosecutor referenced Gurrieri's failure to provide this information and, following defense counsel's objection, the court instructed the prosecutor to confine her argument "to the evidence that was admitted."

¶33 A prosecutor may question or comment on a defendant's failure to produce evidence to support a defense without shifting the burden of proof, provided the prosecutor does not "call attention to the defendant's own failure to testify." *State v. Fuller*, 143 Ariz. 571, 575 (1985); *see also State v. Sarullo*, 219 Ariz. 431, 437, ¶ 24 (App. 2008) ("When a prosecutor comments on a defendant's failure to present evidence to support his or her theory of the case, it is neither improper nor shifts the burden of proof to the defendant so long as such comments are not intended to direct the jury's attention to the defendant's failure to testify.").

¶34 We find no error. Gurrieri testified that: (1) he had been given authority to enter the victim's property by the victim's son, (2) the victim's son had provided him with contact information, and (3) he had given that contact information to his friend Veronica. As a result, the prosecutor's questions and argument addressing Gurrieri's failure to provide information supporting these claims to the police was permissible.

### C. References to Gurrieri as a "Prisoner" and Bulk Trash Cleanup as a "Ruse"

¶35 Gurrieri contends the prosecutor engaged in misconduct by eliciting testimony from the arresting officer characterizing Gurrieri as a "prisoner," and then referring to Gurrieri as a "prisoner" herself during a follow-up question. As noted by the court, at that point in the prosecutor's direct examination, the officer had already explained that he had arrested Gurrieri and was transporting him to the police station for booking. Thus, the description of Gurrieri's prisoner status was accurate and the prosecutor did not engage in misconduct.

¶36 Next, Gurrieri argues the prosecutor engaged in misconduct by eliciting testimony from the arresting officer that burglars sometimes "dress up" as workers as part of an elaborate "ruse" to conceal their illegal activity. This explanation of burglars' behavior followed testimony that some of the co-defendants were wearing work vests and hats at the time of their arrest. As noted by the State, police officers may testify regarding "techniques and methods used by criminals." *U.S. v. Anderson*, 813 F.2d 1450, 1458 (9th Cir. 1987). Therefore, the prosecutor's question to the

officer, and subsequent argument claiming the defendants were "hid[ing] in plain sight," were not improper.

### D. Impugning Defense Counsel

**¶37** Gurrieri contends the prosecutor engaged in misconduct by questioning the integrity of defense counsel at trial.

**¶38** During closing argument, the prosecutor argued the co-defendants knew their presence was unlawful, as evidenced by their attempt to leave when they spotted the police near the property. The prosecutor then remarked: "[W]hen the law is on your side, you pound the law. When the facts are on [your] side, you hammer away at the facts. When neither, you hammer the table. That's what they are doing here, ladies and gentlemen, smok[e and] mirrors." Defense counsel objected and moved for a mistrial, which the court denied. The prosecutor then resumed her argument and repeatedly stated that defense counsel had engaged in "misdirection" by criticizing the police officers' investigation, such as their failure to collect fingerprint or DNA evidence.

**¶39** Prosecutors have wide latitude in closing argument, *State v. Hill*, 174 Ariz. 313, 322 (1993), but "[j]ury argument that impugns the integrity or honesty of opposing counsel is [] improper." *Hughes*, 193 Ariz. at 86, ¶ 59. Criticism of defense theories and tactics, on the other hand, "is a proper subject of closing argument." *State v. Ramos*, 235 Ariz. 230, 238, ¶ 25 (App. 2014) (internal quotations omitted).

**¶40** The prosecutor's comments were not personal attacks on defense counsel's integrity, but permissible critiques of defense tactics and strategy. The argument was not improper.

### E. Opinion Testimony Regarding Gurrieri's Truthfulness

**¶41** Gurrieri argues the prosecutor engaged in misconduct by eliciting testimony from Officer R. about the truthfulness of Gurrieri's post-arrest statements.

**¶42** When defense counsel cross-examined Officer R., he asked whether he suggested, during his questioning of Gurrieri, that it was possible someone had impersonated the victim's son and "duped" or "swindled" Gurrieri. Officer R. responded that he "did say those things." Defense counsel then asked "yet you didn't go looking for this person that may be out there claiming to be [the victim's son]," and Officer R. replied "[t]hat is correct."

¶43        On redirect the prosecutor asked Officer R. whether he actually believed Gurrieri had been "duped" by someone impersonating the victim's son.  Officer R. stated that he suggested this possibility to Gurrieri as an interrogation technique to extract more information.  The prosecutor then asked Officer R. if he believed Gurrieri was "swindled," and the officer testified that he believed Gurrieri had indeed burglarized the victim's property.  The prosecutor asked Officer R. whether he believed Gurrieri was honest with him and he stated that he did not believe Gurrieri had been honest.  When the prosecutor asked why the officer did not believe Gurrieri, defense counsel objected, and the court sustained the objection.

¶44        Because Gurrieri did not object to the prosecutor's questions, other than the final question that was sustained by the court, Gurrieri has not preserved the issue.  Accordingly, we review solely for fundamental error.  *State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-20 (2005).

¶45        Although a witness's opinions "regarding questions of truthfulness and guilt are generally inadmissible," such evidence may be introduced when the *defendant* places the witness's opinions at issue.  *State v. Williams*, 133 Ariz. 220, 227-28 (1982).  Stated differently, when the defendant "injects improper or irrelevant evidence or argument," the State may respond with "evidence on the same subject," even if such evidence would be inadmissible otherwise.  *Pool*, 139 Ariz. at 103 (internal quotation omitted); *see also State v. Fish*, 222 Ariz. 109, 124, ¶ 48 n.11 (App. 2009).  "[I]n essence the open door . . . doctrine means that a party cannot complain about a result he caused."  *State v. Kemp*, 185 Ariz. 52, 60-61 (1996) (internal quotation omitted).

¶46        Gurrieri opened the door to Officer R.'s statements on redirect by eliciting testimony suggesting the police intentionally failed to investigate credible, exculpatory information.  *See State v. Doerr*, 193 Ariz. 56, 63, ¶¶ 25-28 (1998) (holding defense cross-examination "that implied that the police had improperly failed to look for an assailant," as identified by the defendant, "opened the door" to the officer's testimony on redirect explaining "why the police did not believe the defendant and did not do more to pursue another perpetrator"); *see also State v. Martinez*, 230 Ariz. 382, 385, ¶ 13 (App. 2012) (concluding defense counsel's suggestion during opening statements that a police officer was "less than diligent in his investigation" opened the door to the officer's subsequent testimony "explaining why he did not believe the defendant and did not do more to pursue" the defendant's story).  Therefore, the court did not err, much less

commit fundamental error, by allowing the prosecutor to ask Officer R. whether he found Gurrieri's story credible.

**¶47**  Because Gurrieri has not demonstrated any instance of prosecutorial misconduct, "there can be no cumulative effect of misconduct sufficient to permeate the entire atmosphere of the trial with unfairness." *See State v. Bocharski*, 218 Ariz. 476, 492, ¶ 75 (2008).  Accordingly, the court did not abuse its discretion by denying Gurrieri's motion for mistrial.

### III.  Denial of Motion for Directed Verdict

**¶48**  Gurrieri contends the court erred by denying his motion for a judgment of acquittal.  Ariz. R. Crim. P. 20.

**¶49**  We review de novo a trial court's ruling on a Rule 20 motion. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011).  "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id*. at ¶ 16 (internal quotation omitted).  Sufficient evidence upon which a reasonable jury can convict may be direct or circumstantial and "is such proof that reasonable persons could accept as adequate" to "support a conclusion of defendant's guilt beyond a reasonable doubt."  *State v. Borquez*, 232 Ariz. 484, 487, ¶¶ 9, 11 (App. 2013).  A judgment of acquittal is appropriate only when "there is no substantial evidence to warrant a conviction."  Ariz. R. Crim. P. 20(a). Additionally, a defendant who presents a defense following the denial of a Rule 20 motion "waives any error if his case supplies evidence missing in the state's case."  *State v. Bolton*, 182 Ariz. 290, 308 (1995).  In such circumstances, we consider all the evidence presented at trial.  *Id*.

**¶50**  A person commits burglary in the third degree by "[e]ntering or remaining unlawfully in or on a nonresidential structure or in a fenced commercial or residential yard with the intent to commit any theft or any felony therein."  Ariz. Rev. Stat. ("A.R.S.") § 13-1506(A)(1) (2010).  A person enters or remains unlawfully by "enter[ing] or remain[ing] on premises when the person's intent for so entering or remaining is not licensed, authorized or otherwise privileged[.]"  A.R.S. § 13-1501(2) (2010).

**¶51**  Here, the evidence shows the victim did not authorize anyone to enter or remain in his warehouse; rather, the property was secured with padlocks and chains.  Nonetheless, while conducting routine patrol, an officer observed Gurrieri repeatedly enter the warehouse and then exit carrying large items that he placed in his vehicle.  In response to the officer's questions, Gurrieri explained that he had permission to enter the

warehouse and remove the victim's property. When pressed, however, Gurrieri repeatedly changed his story, initially claiming Veronica hired him, then stating the co-defendants hired him, and finally asserting the victim's son had hired him.

¶52      At trial, Gurrieri did not contest that he had entered and remained in the warehouse without the victim's permission. He also did not dispute that he had removed the victim's property and placed it in his vehicle. Instead, his entire defense was premised on his belief that his presence and conduct were authorized, and he therefore lacked the requisite intent to commit burglary. However, based on Gurrieri's contradictory statements, it was reasonable for the jury to reject his claim.

¶53      Given these facts, the court did not err by denying Gurrieri's Rule 20 motion.

## CONCLUSION

¶54      For the foregoing reasons, Gurrieri's conviction and sentence are affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA